**Jackie HARRIS, Plaintiff-Appellee,**

v.

**Raymond K. PROCUNIER, Director of the Department of Corrections of the State of California, Defendant-Appellant.**

No. 72–1347.

United States Court of Appeals, Ninth Circuit.

May 22, 1974.

Certiorari Denied Oct. 29, 1974.
See 95 S.Ct. 235.

---

Russell Iungerich, Deputy Atty. Gen. (argued), Alan G. · Novodor, Deputy Atty. Gen., Los Angeles, Cal., for defendant-appellant.

Carson Taylor (argued), Los Angeles, Cal., for plaintiff-appellee.

Before the Court En Bank: CHAMBERS, MERRILL, KOELSCH, BROWNING, DUNIWAY, ELY, HUFSTEDLER, WRIGHT, TRASK, CHOY, GOODWIN, WALLACE and SNEED, Circuit Judges, and BARNES, Senior Circuit Judge.

## OPINION

BARNES, Senior Circuit Judge:

The State of California (herein the State) appeals from the decision of the district court to grant a petition for writ of habeas corpus to appellee, Jackie Harris. In 1940, at the age of 14, Harris was charged with murder in a state court. The Juvenile Court had exclusive jurisdiction over him and conducted a hearing to examine Harris and determine whether he should be tried as an adult. Harris was not represented by counsel at that time, and there is no indication that he was informed of his right to same. The Juvenile Court found Harris to be unfit for juvenile proceedings and waived its jurisdiction. An information was subsequently filed against him in Superior Court; counsel was appointed for him and he entered a plea of guilty. He was placed in a state hospital as a sexual psychopath, and remained there for six years. After his release he was sentenced to life imprisonment.

In Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), the Supreme Court held that a determination by a juvenile court on the issue of whether it should waive jurisdiction over a juvenile is a critical stage in a criminal proceeding. It therefore requires a hearing conforming to the basic requirements of due process, including assistance of counsel. Harris filed a petition for writ of habeas corpus in state court arguing that *Kent* should be given retroactive effect. The Supreme Court for the State of California denied

the petition holding that retroactive application of *Kent* would seriously disrupt the administration of justice, citing Johnson v. New Jersey, 384 U.S. 719, 731, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). In re Harris, 67 Cal.2d 876, 64 Cal.Rptr. 319, 434 P.2d 615 (1967).

Subsequent to the filing of his petition in the United States district court, but before that court entered its order granting the petition, this Court filed its opinion in Powell v. Hocker, 453 F.2d 652 (9th Cir. 1971) (No. 71–1118, before Chambers, Choy and Muecke, JJ.), holding that *Kent* is to be given retroactive effect. *Powell* held that since Harris was not represented by counsel at the hearing before the Juvenile Court in 1940, *Kent* necessitates a ruling that that hearing was invalid. If the hearing is held invalid, the Superior Court did not have jurisdiction to entertain Harris's plea of guilty. Harris would be released from custody and the matter remanded back to the juvenile court, which would no longer have custody jurisdiction over him because he is over 18 years of age. (He should now be 47 years of age.)

The State argues that *Powell* should be overruled on the basis of Adams v. Illinois, 405 U.S. 278, 92 S.Ct. 916, 31 L. Ed.2d 202 (1972), and seeks a hearing *en banc*. In Adams the Supreme Court held that Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970), is not to be given retroactive effect. *Coleman* stands for the proposition that an accused is constitutionally entitled to the presence of counsel at a preliminary hearing. It is the State's position that a preliminary hearing for an adult (*Coleman*) is no less important a stage in the criminal proceedings than a certification hearing for a juvenile (*Kent*).

RETROACTIVITY:

■ The retroactivity of a rule concerning constitutional claims in criminal litigation turns, in a practical sense, on the exigencies of the situation. Stovall v. Denno, 388 U.S. 293, 296–297, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Johnson

v. New Jersey, 384 U.S. 719, 726–727, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). And " . . . the choice between retroactivity and nonretroactivity in no way turns on the value of the constitutional guarantee involved." *Johnson, supra,* at 728. In analyzing such a problem, three criteria are to be considered: "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." *Stovall, supra,* at 297.

"Foremost among these factors is the purpose to be served by the new constitutional rule," Desist v. United States, 394 U.S. 244, 249, 89 S.Ct. 1030, 1033, 22 L.Ed.2d 248 (1969). The new constitutional rule enunciated in *Kent* was to insure that juveniles in certification proceedings were provided a full hearing and the right to counsel. Rules concerning the right to counsel have often been applied retroactively: Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L. Ed.2d 799 (1963), concerning a criminal defendant's right to counsel at time of trial; Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961), right to counsel at time of arraignment; Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), right to counsel at time of appeal; and McConnell v. Rhay, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2 (1968), making the right to counsel at sentencing retroactive as granted in Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967). For a complete list see Williams v. United States, 401 U.S. 646, 653 fn. 6, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971). In distinguishing the right to counsel cases which require retroactive application from all other cases where retroactive application has been generally denied, the Supreme Court stated the following:

"Where the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious ques-

tions about the accuracy of guilty verdicts in past trials, the new rule has been given complete retroactive effect. Neither good-faith reliance by state or federal authorities on prior constitutional law or accepted practice, nor severe impact on the administration of justice has sufficed to require prospective application in these circumstances." (Footnotes omitted.) Williams v. United States, *supra,* at 653.

The question is therefore whether the purpose of *Kent* was to "overcome an aspect of the criminal trial that substantially impairs its truth-finding function"? We hold that it was not. First, a certification hearing is not a trial, but a hearing. Juvenile proceedings are not intended to be adversarial. Second, the function of a certification hearing is not to gather facts for the purpose of conducting criminal proceedings against the juvenile, but to determine whether it would be proper for the juvenile court to continue to assert jurisdiction over the juvenile. While we in no way discount the thrust of *Kent* to provide due process guarantees at the certification hearing, we do not see that it is the type of constitutional rule which is directed at, or in any way impairs, the truth-finding function.

With respect to the second criterion (the extent of reliance by law enforcement authorities on the old standards), we simply note that Harris's certification hearing occurred in 1940, while the rule in *Kent* was not made until 1966. We find this fact, in and of itself, sufficient factual proof that the law enforcement authorities have relied on the old rule for a period which meets the second criterion.

The third criterion, the effect on the administration of justice of a retroactive application of the new standards, would be devastating. In re Harris, *supra,* 64 Cal.Rptr. at 321–322. 434 P.2d at 617–618. The number of cases affected would be significant, and there would be numerous instances where the juvenile courts would no longer have jurisdiction over the person of the defend-

ant by reason of age. *Cf.* Brumley v. Charles R. Denney Juvenile Center, 77 Wash.2d 702, 466 P.2d 481 (1970), wherein the Supreme Court of Washington declined to apply *Kent* retroactively; Bouge v. Reed, 254 Or. 418, 459 P.2d 869 (1969), wherein the Supreme Court of Oregon refused to apply *Kent* retroactively; and Mordecai v. United States, 137 U.S.App.D.C. 198, 421 F.2d 1133 (1969) cert. denied, 397 U.S. 977, 90 S. Ct. 1098, 25 L.Ed.2d 272 (1960), wherein the Court of Appeals for the District of Columbia declined to apply *Kent* retroactively.

Perhaps even more importantly, the plaintiff-appellee is confined by reason of his own guilty plea in an adult court with all constitutional safeguards present. He thus has waived the failure of the state to provide counsel at the time of his juvenile court appearance. Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); Sanders v. Craven, 488 F.2d 478 (9th Cir. 1973); Mann v. Smith, 488 F.2d 245 (9th Cir. 1973); Wallace v. Heinze, 351 F.2d 39 (9th Cir. 1965) cert. denied, 384 U.S. 954, 86 S.Ct. 1574, 16 L.Ed.2d 550 (1966).

For these reasons, we overrule Powell v. Hocker, *supra,* on the issue of retroactivity, and remand the action to the district court with instructions to dismiss the petition for writ of habeas corpus.

CHAMBERS, MERRILL, KOELSCH, DUNIWAY, EUGENE A. WRIGHT, TRASK, ALFRED T. GOODWIN, WALLACE and SNEED, Circuit Judges, concur.

BROWNING, Circuit Judge (concurring):

I concur in the reversal of the judgment essentially for the reasons stated by Chief Judge Bazelon in his opinion in Mordecai v. United States, 421 F.2d 1133 (1969). As Judge Bazelon said of Mordecai, "appellant presents a forceful claim that the absence of counsel . . . at the time of his waiver must seriously undermine our confidence in the reliability of the process that led to

his trial in an adult court," but "[e]ven if nonpunitive rehabilitation in the juvenile process would have been the proper path in [1940], society can no longer offer what was then, rightly or wrongly, denied." 421 F.2d at 1138.

The solution offered in dissent only highlights the problem. The dissent recognizes that a person of Harris's age (48) would not now be a fit and proper subject for juvenile court treatment. The alternative, it is suggested, is "a new trial in adult court." *See* page 585, *infra* (Hufstedler, J., dissenting). But Harris does not suggest that his adult court proceeding was in any way defective. The proposed remedy is wholly unrelated to the fault.

It is true that the same impossibility of affording a suitable remedy was present in *Kent* itself. *See* page 585, n. 7, *infra* (Hufstedler, J., dissenting). However, retroactive application to *Kent* was necessitated by the Article III limitation of the power of federal courts to the decision of "Cases" and "Controversies." Stovall v. Denno, 388 U.S. 293, 301, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

CHOY, Circuit Judge (concurring):

While I concur in the majority opinion as to Jackie Harris' appeal, I feel it unnecessary that Powell v. Hocker, 453 F.2d 652 (9th Cir. 1971) be overruled in the process. The two cases are horses of different colors.

True, the juvenile offenders in both *Powell* and *Harris* were without counsel at their respective state certification proceedings, but the similarities between the cases end there.

### Retroactivity of Kent

In *Harris* the California juvenile court did conduct a hearing in accordance with state statute before determining that Harris should be tried as an adult. Ante at page 577. But in *Powell*, certification for adult trial was admittedly made without any semblance of the "full investigation" mandated by the Nevada statute. Powell v. Sheriff, Clark County, 85 Nev. 684, 687, 462 P.2d 756, 758 (1969).

In *Harris*, the California Supreme Court expressly found that retroactive application of *Kent* would be devastating as to California. 67 Cal.2d at 879, 64 Cal.Rptr. at 321–322, 434 P.2d at 617–618. The record in *Powell* contains no similar finding as to Nevada and the briefs contain no such claim.

Harris' certification hearing occurred in 1940, twenty-six years before *Kent* was pronounced. Powell's non-hearing was in 1966, three weeks after *Kent*.

While the three criteria of Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) negate retroactivity of *Kent* as applied by my Brother Barnes in *Harris*, those tests do not compel the same result in *Powell* because of the factual differences between the two cases above set forth.

### Waiver by Guilty Plea

We held in *Powell*, 453 F.2d at 656, that the failure of the Nevada juvenile court to comply with the Nevada statute in certifying the juvenile for trial as an adult, conferred no jurisdiction over Powell in the adult criminal court. We also quoted from a prior holding of this court, Thomas v. United States, 290 F.2d 696, 697 (9th Cir. 1961) that: "When a defendant voluntarily and knowingly pleads guilty at his trial this constitutes a waiver of all *nonjurisdictional* defenses . . . " (emphasis supplied).

In *Harris* there having been compliance with the California hearing statute before the certification of Harris for adult trial, the superior court thereby acquired jurisdiction over the juvenile. Harris' subsequent guilty plea with advice and aid of counsel may thus be held to have waived failure of the state to provide him counsel in the juvenile court proceeding. But in *Powell*, the adult criminal court acquired no jurisdiction over the juvenile and so Powell's guilty plea waived nothing—the court could not even accept the plea.

Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973) which held that a guilty plea waives the claim of deprivation of petitioner's constitutional right because Negroes were excluded from the grand jury which indicted him, does not apply to *Powell*, but does to *Harris*. Likewise as to the *Brady* trilogy [1] all of which held that a guilty plea waives certain constitutional defects; and likewise also as to the three cases of this court cited with *Tollett* in the majority opinion.[2] In none of those cases was there lack of jurisdiction in the court accepting the plea of guilty.

HUFSTEDLER, Circuit Judge, dissenting, with whom Judge ELY concurs:

At a hearing in which he was denied the assistance of counsel, Harris was found not to be a fit and proper subject for juvenile proceedings. (*See* Calif. Welfare & Institutions Code § 707.) The juvenile court thereupon waived its jurisdiction in order to permit an information to be filed in the Superior Court charging Harris with murder. Subsequent to Harris's conviction and sentence to life imprisonment, the Supreme Court held, with respect to a comparable waiver of jurisdiction by the District of Columbia juvenile court, that "there is no place in our system of law for reaching a result of such tremendous consequences without ceremony—without hearing, without effective assistance of counsel, without a statement of reasons." (Kent v. United States (1966) 383 U.S.

541, 554, 86 S.Ct. 1045, 1053, 16 L. Ed.2d 84, *accord,* In re Gault (1967) 387 U.S. 1, 30, 87 S.Ct. 1428, 18 L.Ed.2d 527.) [1] Nevertheless, the majority refuses to recognize Harris's right to counsel at the fitness hearing, holding that *Kent* is not to be given retroactive application. In so holding, the majority misconceives both the unique nature of the fitness hearing and the critical role that counsel can play at those hearings.

The fitness hearing has no direct counterpart in the usual adult criminal process. The purpose of the proceeding, unlike an indictment or preliminary hearing, is not to establish probable cause for the initiation of further action. The hearing is designed to determine, based on an evaluation of the youth, his background, and his criminal history, the nature of response the state should make upon a determination of guilt. Thus, to the extent that it can be analogized to a stage in the criminal prosecution, the fitness hearing most nearly resembles a sentencing proceeding by the trial judge. (Kemplen v. Maryland (4th Cir. 1970) 428 F.2d 169, 174; *see* Donald L. v. Superior Court (1972) 7 Cal.3d 592, 596–598, 102 Cal. Rptr. 850, 498 P.2d 1098.) By finding that a youth is not a fit subject for exercise of juvenile court jurisdiction, the court determines that the accused, if found guilty, will be sentenced as an adult rather than receive non-punitive rehabilitation pursuant to the options

1. Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L. Ed.2d 785 (1970).

2. Sanders v. Craven, 488 F.2d 478 (9th Cir. 1973); Mann v. Smith, 488 F.2d 245 (9th Cir. 1973); Wallace v. Heinze, 351 F.2d 39 (9th Cir. 1965), cert. denied, 384 U.S. 954, 86 S.Ct. 1574, 16 L.Ed.2d 550 (1966).

1. At the time of the *Kent* decision, there was some doubt that the requirement of counsel it announced was of constitutional dimension. The decision in *Kent* was based on a statute applicable to the District of Columbia, but

the statute was "read in the context of constitutional principles relating to due process and the assistance of counsel." (383 U.S. at 557.) In re Gault, holding *inter alia* that due process requires that a minor be represented by counsel in proceedings to determine delinquency that may result in commitment to an institution, clarified the *Kent* decision: "Just as in *Kent* . . . we indicated . . . that the assistance of counsel is essential for purposes of waiver proceedings, so we hold now that it is equally essential for the determination of delinquency. . . ." (387 U.S. at 36.) The case at bench, accordingly, raises the question of the retroactivity of both *Kent* and portions of the decision in *Gault*.

available to the juvenile court under the Welfare and Institutions Code. (*See* Kent v. United States, *supra*, 383 U.S. at 556–557.) [2]

As early as 1948 the Supreme Court held that the absence of counsel during the dispositional phase of the criminal process, together with "assumptions concerning [the accused's] criminal record which were materially untrue," deprived the accused of his constitutional rights. "In this case, counsel might not have changed the sentence, but he could have taken steps to see that the conviction and sentence were not predicated on misinformation or misreading of court records, a requirement of fair play which absence of counsel withheld from this prisoner." (Townsend v. Burke (1948) 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690.) In Mempa v. Rhay (1967) 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336, the Court made it clear that the right to counsel applied to all dispositional proceedings, even those that were not formally part of the "sentencing" hearing before the trial judge immediately after a finding of guilt. Although the Court acknowledged that there might be "fewer opportunities for the exercise of judicial discretion" in such non-traditional dispositional hearings, it nonetheless held that "the necessity for the aid of counsel in marshaling the facts, introducing evidence of mitigating circumstances and in general aiding and assisting the defendant to present his case as to sentence is apparent." (*Id.* at 135.)

The Supreme Court has recognized that the need for counsel to marshal facts and introduce evidence of mitigating circumstances when dispositional determinations are being made is equally great in juvenile proceedings: "[I]n all cases children need advocates to speak for them and guard their interests, particularly when disposition decisions are made. It is the disposition stage at which the opportunity arises to offer individualized treatment plans and in which the danger inheres that the court's coercive power will be applied without adequate knowledge of the circumstances." (In re Gault, *supra* at 38–39 n. 65 (quoting from Report by the President's Comm'n on Law Enforcement and Administration of Justice, The Challenge of Crime in a Free Society); *see* Kent v. United States, supra, at 561–563; Mordecai v. United States (1969) 137 U.S.App.D.C. 198, 421 F.2d 1133, 1135–1136: "Experience demonstrates that the youth and his parents— when they are available—cannot be counted upon to present the case for juvenile treatment incisively and intelligently. Within our judicial system, we consistently rely upon counsel to marshal facts, present arguments, and explore alternatives. . . . The waiver hearing certainly calls as loudly for the 'guiding hand' of counsel as does the sentencing hearing.")

The need for counsel at dispositional hearings has been found by the Supreme Court to be so compelling that it has held the right to counsel recognized in *Mempa* fully retroactive. In McConnell v. Rhay (1968) 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2, the Supreme Court held that, as in Gideon v. Wainwright (1963) 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (right to counsel at trial) and Douglas v. California (1963) 372 U.S. 353, 83 S. Ct. 814, 9 L.Ed.2d 811 (right to counsel on appeal), the right to counsel at dispositional proceedings "relates to 'the very integrity of the fact-finding process.' " (393 U.S. at 3.) The majority fails to distinguish the role of counsel at sentencing proceedings, held to be so vital to the integrity of the criminal process in *Mempa* and *McConnell,* from the function that an attorney can perform at the proceedings to determine amena-

---

2. The dispositional-sentencing nature of the fitness hearing is underscored by the fact that not until 1972 did the California Supreme Court hold that the hearing on the issue of amenability to juvenile treatment could precede decision of the "jurisdictional" issue of whether the minor had violated a criminal statute. (Donald L. v. Superior Court, *supra.*)

bility to juvenile treatment at issue in *Kent* and the case at bench. Accordingly, I cannot agree with the majority's conclusion that because the juvenile fitness hearing is not a trial and its function is not to gather facts for the criminal guilt determination process—characterizations that are, of course, equally applicable to the dispositional proceedings in *Mempa* and *McConnell*—the purpose of the constitutional rule announced in *Kent* and *Gault* does not require retroactive application. (*See* Mordecai v. United States, *supra* at 1136.)

Analyzing the fitness hearing as analogous to a sentencing proceeding in the usual criminal process, however, does not fully capture the unique nature of the decision as to the amenability of a minor to treatment by the juvenile court. In many ways, the youth of a juvenile offender is a defense to the offense charged, similar to a plea of diminished responsibility. (*See* Kemplen v. Maryland, *supra* at 175.) The hearing which determines his fitness for treatment is the only stage at which a juvenile has an opportunity to assert this "defense," and is thus comparable to the arraignment proceeding considered in Hamilton v. Alabama (1961) 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114, which provided an accused the only opportunity he had to plead the defense of insanity.[3] The right to counsel at a proceeding at which an accused must assert a defense or lose its benefit has also been found to relate to the "very integrity of the fact-finding process" and held fully retroactive. (*See* Arsenault v. Massachusetts (1968) 393 U.S. 5, 6, 89 S.Ct. 35, 21 L.Ed.2d 5; Stovall v. Denno (1967) 388 U.S. 293, 297–298, 87 S.Ct. 1967, 18 L.Ed.2d 1199.)

The majority acknowledges, as it must, that the purpose served by a new constitutional ruling is the primary factor in determining the rule's retroactivity. (Desist v. United States (1969) 394 U.S. 244, 249, 89 S.Ct. 1030, 22 L.Ed.2d 248.) Whether one focuses on the dispositional effect of the fitness hearing (and the close analogy to Mempa v. Rhay) or on its impact on a juvenile's "youth defense" (and the similarity to Hamilton v. Alabama), the purpose served by the right to counsel in this context argues strongly for the retroactive application of *Kent* and *Gault*. The majority opinion makes no attempt to distinguish the reasoning of the Supreme Court in *Mempa* and *Hamilton* and the decisions holding fully retroactive the right to counsel established in those cases. I do not believe that any such distinction can be made. Nor do the other two factors of the *Stovall* test preclude a finding of retroactivity; for, as the Supreme Court has repeatedly emphasized, when the purpose of a new constitutional right relates to the fundamental fairness of the criminal process —as it does at sentencing hearings, arraignment proceedings where unpleaded defenses are lost, and juvenile fitness hearings—"[n]either good-faith reliance by state or federal authorities on prior constitutional law or accepted practice, nor severe impact on the administration of justice has sufficed to require prospective application . . . ." (Ivan V. v. City of New York (1972) 407 U.S. 203, 204, 92 S.Ct. 1951, 1952, 32 L.Ed.2d 659; *accord,* Williams v. United States (1971) 401 U.S. 646, 653, 91 S.Ct. 1148, 28 L.Ed.2d 388 (plurality opinion by White, J.); Adams v. Illinois (1972) 405 U.S. 278, 280, 92 S.Ct. 916, 31 L.Ed.2d 202 (plurality opinion by Brennan, J.). *See also* Roberts v. Russell (1968) 392 U.S. 293, 295, 88 S.Ct. 1921, 20 L.Ed.2d 1100.)

---

3. Because the juvenile court's determination as to fitness is subject to review in subsequent proceedings (*see* People v. Yeager (1961) 55 Cal.2d 374, 389, 10 Cal.Rptr. 829, 359 P.2d 261; In re Harris (1967) 67 Cal. 2d 876, 880, 64 Cal.Rptr. 319, 434 P.2d 615), the fitness hearing is not literally the only opportunity a defendant has to raise the youth "defense." However, this possible "second chance" does not distinguish the fitness hearing from the arraignment proceeding considered in *Hamilton*; for in that case the defendant also had a second, limited opportunity to plead the insanity defense. (*See* 368 U.S. at 53.)

Even if the impact of retroactivity upon the administration of justice were relevant, however, the majority has failed to demonstrate that full retroactivity would have a significant adverse effect. Judicial opinion as to the number of cases that would be affected is in conflict. (*Compare, e. g.,* Mordecai v. United States, *supra,* 421 F.2d at 1138 ("improbable that vast numbers of young offenders waived without a hearing or representation by counsel are still in custody") *with, e. g.,* In re Harris, *supra,* 67 Cal.2d at 879, 64 Cal.Rptr. at 321, 434 P.2d at 617 ("Judgments of conviction entered following waiver of juvenile court jurisdiction and final before *Gault* was decided ' "threaten to be of significant quantity." ' ").) The statistics submitted by the state indicate that as of December 1971 there were slightly more than 300 defendants who had been committed to the custody of the Adult Authority at age 18 or younger between 1945 and the date of *Gault* who were still in prison or on parole. However, this figure is much larger than the actual number of cases that would be affected by holding *Kent* retroactive.

The state's figure includes youths committed at age 18, who may never have been within the jurisdiction of the juvenile court and thus not subject to a fitness hearing. (*See* Calif.Welfare & Institutions Code §§ 602–604 (juvenile court's jurisdiction extends only to defendants under 18 at the time of alleged offense).) The state's statistics also fail to exclude those prisoners and parolees who were represented by counsel at their fitness hearings. The 1961 revision of juvenile court law established a general right to counsel at juvenile hearings (*see* 1961 Calif.Stats., ch. 1616, § 2, art. 8, *as amended* Calif.Welfare & Insti-

tutions Code §§ 679, 700); hence, the number of offenders who were represented by counsel is potentially quite large. In addition, the number of cases that would be affected probably has been further reduced by termination of parole or unconditional release during the nearly 2½ years since these data were compiled.[4] Thus, the actual number of cases that would be affected by a finding of retroactivity could be as small as ¼ or even ⅒ of the number suggested by the state. Even if nearly 300 cases in California could be affected by holding *Kent* and *Gault* retroactive, however, this is still a far cry from the potential for "devastating" impact on the administration of criminal justice that the Court has found in those instances in which it has relied on this factor in determining that a new standard should not be applied retroactively. (*E. g.,* DeStafano v. Woods (1968) 392 U.S. 631, 634, 88 S. Ct. 2093, 20 L.Ed.2d 1308 (all convictions for serious crimes in certain states; all non-capital cases in another); Tehan v. United States ex rel. Shott (1966) 382 U.S. 406, 418, 86 S.Ct. 459, 15 L.Ed.2d 453 (every single trial in which defendant took the stand in six states, including California).)

Neither is there any validity to the argument made by the majority that "there would be numerous instances where the juvenile courts would no longer have jurisdiction over the person of the defendant by reason of age."[5] Juvenile court jurisdiction in California is restricted only by the age of the defendant at the time of the offense: "Any person who is under the age of 18 years when he violates any law of this state or of the United States or any ordinance of any city or county of this state defining crime . . . is within the jurisdic-

---

4. It should be noted that if the majority is correct in holding that entry of a guilty plea in Superior Court precludes a challenge to the denial of counsel at the juvenile fitness hearing, there would be a further significant reduction in the number of cases affected by holding *Kent* retroactive.

5. In any event, this consideration is obviously only relevant to those cases remanded for a new fitness determination in which it is concluded that the juvenile court should have retained jurisdiction.

tion of the juvenile court, which may adjudge such person to be a ward of the court." (Calif.Welfare & Institutions Code § 602. *See also id.* §§ 603, 604.) If the absence of counsel at the pre-*Gault* fitness hearing were held to invalidate the subsequent conviction, proceedings could again be initiated in the juvenile court—assuming that retrial was felt to be necessary for public safety. Presumably defendants like Harris who are substantially older than 18 could now properly be found not fit and proper subjects for juvenile court treatment and a new trial in adult court would then be appropriate.[6] Thus, the passage of time has not made an appropriate remedy any more inconvenient or impracticable than in any other retroactivity case.

Even if California were not a jurisdiction in which retrial within juvenile court jurisdiction was possible, the argument premised on the lack of such jurisdiction would not be persuasive on the issue of retroactivity. The same jurisdictional difficulty inheres in applying retroactively any constitutional ruling that relates to juvenile court procedures. Yet in Ivan V. v. City of New York, *supra,* the only juvenile procedure retroactivity case it has considered, the Supreme Court did not hesitate to make fully retroactive its decision in In re Winship (1970) 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368, concerning the standard of proof in juvenile proceedings. Moreover, in *Kent* itself the Supreme Court was faced with the identical problem. The Court recognized that "[i]f on remand the decision were against waiver [of juvenile court jurisdiction], the indictment in the District Court would be dismissed. However, pe-

titioner has now passed the age of 21 and the Juvenile Court can no longer exercise jurisdiction over him." (383 U.S. at 564; citation omitted.) Nevertheless, the Court accepted the fact that this might be the result of application of the new right to counsel to a fitness hearing held before *Kent* and remanded the case to the district court for a hearing de novo on waiver with directions to dismiss the indictment if waiver was found to be improper. (*Id.* at 565.) In light of the Supreme Court's acceptance in *Kent* and *Ivan V.* of the possibility that juvenile defendants benefiting from a new constitutional standard might not be retriable, we cannot hold that the potential impact of the identical consequences would be so great as to outweigh the purpose served by the counsel requirement and thus preclude retroactive application of that requirement.[7]

In sum, because of the similarity to the right to counsel at sentencing proceedings and certain types of arraignment hearings, the constitutional requirement of counsel at juvenile fitness hearings established by *Kent* and *Gault* relates to the "very integrity of the fact-finding process." When that is the purpose of a new constitutional rule, the rule is applied retroactively regardless of governmental reliance on the prior standard or impact of the new rule. Even if the effect of the new ruling were relevant, there has been no demonstration that retroactivity would have a significant effect on the administration of criminal justice. In accordance with the standards announced by the Supreme Court in Stovall v. Denno, *supra,* the counsel requirement of *Kent* and *Gault* should be held to be fully retroactive.

6. If the defendant should now be determined to be amenable to treatment by juvenile process, the juvenile court would have jurisdiction to handle the case, regardless of the defendant's present age. (Calif. Welfare & Institutions Code § 602.)

7. In Mordecai v. United States, *supra,* the court recognized that the purpose of the *Kent* rule would normally require its full retroactive application. The *Mordecai* court

denied retroactivity, however, based on the possibility that an appropriate remedy—that is, retrial—would no longer be possible in individual cases. This balancing of the factors of purpose and impact on the criminal process is in conflict with the Supreme Court's resolution of the issue in *Kent*. Accordingly, this aspect of *Mordecai* has little persuasive value.

Apparently as an alternative basis for its decision, the majority also holds that even if *Kent* was retroactive, because of his guilty plea in Superior Court, Harris is not entitled to challenge the propriety of his juvenile fitness hearing. This holding is not supported by the Supreme Court's recent decisions on the effect of entry of a guilty plea on appellate review of antecedent constitutional violations.

In Tollett v. Henderson (1973) 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235, the Supreme Court said "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." But it is clear that the Court in *Tollett* (and in Brady v. United States (1970) 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747, Parker v. North Carolina (1970) 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785, and McMann v. Richardson (1970) 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763) was concerned with alleged constitutional defects in the process by which a defendant is apprehended and his guilt or innocence determined—that is, constitutional challenges to arrest, indictment, the admissibility of evidence, or the voluntariness of a confession. Once an effectively counseled defendant voluntarily and intelligently admits he violated the law, he can no longer object to anything done by the Government in bringing him through the guilt determination process. It is in this sense that "a guilty plea represents a break in the claim of events which has preceded it in the criminal process." (411 U.S. at 267.) The juvenile fitness hearing, as I have already indicated, is primarily a dispositional proceeding. Although in this case it occurred chronologically prior to the entry of the guilty plea, the fitness hearing logically involves a post-guilty-plea determination of the appropriateness of various forms of treatment. Thus, the determination of Har-

ris's amenability to juvenile court process functionally succeeds the "break in the chain of events" to which *Tollett* refers.

This distinction between an alleged defect in the fitness hearing and the constitutional errors at issue in *Tollett* and the *Brady* trilogy is consistent with the rationale of the Supreme Court's decisions. The danger of a trial based on an improper indictment, as alleged in *Tollett,* or on unconstitutionally obtained evidence, as in *McMann,* is that an innocent defendant will be convicted. Once the defendant waives his right to a trial and admits his guilt, that danger is obviated and there is no need to permit the defendant to attack antecedent constitutional violations. The error that Harris asserts, on the other hand, does not involve any element of the guilt determination process. The question is not whether Harris was guilty of an offense, but what disposition can be made. Whether or not the state was required to prove its case against Harris is completely irrelevant to his challenge to this dispositional determination. The danger that absence of counsel at the fitness hearing may have led the juvenile court to conclude erroneously that Harris should be treated as an adult offender is not cured by entry of a guilty plea. Indeed, entry of a plea highlights the importance of a correct determination of Harris's amenability to treatment by juvenile process. Nothing in the reasoning of *Tollett* or the *Brady* trilogy suggests that this type of constitutional challenge is foreclosed by a guilty plea.

The impropriety of the majority's rigid reading of *Tollett* is suggested by the Supreme Court's decision to hear argument in Blackledge v. Perry, cert. granted Oct. 16, 1973, 414 U.S. 908, 94 S.Ct. 218, 38 L.Ed.2d 145. (Argument was heard on Feb. 19, 1974. *See* —— U.S. ——, 94 S.Ct. 2098, 40 L.Ed.2d 628, 42 U.S.L.W. 3482.) The Court must decide in *Perry* whether a guilty plea waives a defendant's right to contest double jeopardy—a defect which obviously arises prior to entry of the guilty plea. If the

Majority's apparent assumption that Tollett precludes review of every alleged constitutional violation which occurred prior to entry of the guilty plea (except competency of counsel) were correct, plenary consideration of *Perry* would not be necessary. Instead, because the lower court decision to grant a writ of habeas corpus based on the double jeopardy argument was made before the Supreme Court's decision in *Tollett,* the decision of the Fourth Circuit would have been vacated and the Court would have remanded for reconsideration in light of *Tollett.*[8]

I would hold the right to counsel at juvenile fitness hearings established by Kent v. United States retroactive and affirm the district court's conditional grant of a writ of habeas corpus.

---

8. It is possible that in *Perry* the Court will decide that double jeopardy is a jurisdictional defense and as such is not waived by entry of a guilty plea. (*See, e. g.* Briley v. Wilson (9th Cir. 1967) 376 F.2d 802, 803.) That decision would also control the case at bench; for, in the words of the majority, "[i]f the hearing is held invalid, the Superior Court did not have jurisdiction to entertain Harris's plea of guilty." In other words, Harris is also raising a jurisdictional defect in his conviction.