Barry Wayne BROWN,
Petitioner-Appellant,

v.

Louie L. WAINWRIGHT, Secretary, Department of Offender Rehabilitation, Respondent-Appellee.

No. 75–2252.

United States Court of Appeals, Fifth Circuit.

Aug. 16, 1976.

Rehearing and Rehearing En Banc Denied Oct. 21, 1976.

Phillip A. Hubbart, Public Defender, Bennett H. Brummer, Asst. Public Defender, Miami, Fla., for petitioner-appellant.

J. Robert Olian, William L. Rogers, Arthur Joel Berger, Asst. Attys. Gen., Miami, Fla., Robert L. Shevin, Atty. Gen., Tallahassee, Fla., for respondent-appellee.

Before AINSWORTH, MORGAN and RONEY, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

Petitioner Barry Wayne Brown appeals from a dismissal of his petition for habeas corpus relief by the United States District Court for the Southern District of Florida. Relevant facts are as follows: On March 2, 1965, petitioner Brown, who was only sixteen years old at the time, was arrested as a suspect in two armed robberies and a murder. He was taken before the juvenile court for a determination whether that court would waive jurisdiction over him and allow him to be tried as an adult. Affording Brown no counsel and giving no notice to his parents, the juvenile court conducted a waiver hearing and determined, pursuant to his caseworker's recommendation, that Brown should be tried as an adult, in that all rehabilitative efforts and facilities had been exhausted. Specifically, prior to his arrest in March of 1965 on the armed robbery and murder charges, Brown had been before the juvenile court four times for armed robbery, assault, and possession of a concealed weapon and had once escaped from a juvenile detention center.

Subsequently, Brown was tried as an adult, convicted on the armed robbery charge, and sentenced on December 29, 1965 to life imprisonment. Paroled on February 2, 1971, Brown was arrested and convicted of an armed robbery occurring while on parole and was sentenced to another life sentence to run consecutively to the life sentence imposed in 1965, his parole from that conviction having been revoked. Later, Brown received an additional three year sentence and a five year sentence.

In his petition for habeas corpus relief, Brown alleges that the waiver hearing held

by the juvenile court in 1965 did not comport with due process requirements as mandated by *Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). In *Kent,* the Supreme Court held that juvenile court waiver hearings must comply with general due process standards, among which is the juvenile's right to counsel at such a hearing.[1] The district court determined that *Kent* should be applied retroactively and, modeling its remedy after that adopted in *Kemplen v. Maryland,* 428 F.2d 169 (4th Cir. 1970) and in *Brown v. Cox,* 481 F.2d 622 (4th Cir. 1973), ordered a reconstructed waiver hearing in the state court to determine what the juvenile court would have done in light of all information that might reasonably have been proffered by competent counsel. The state court held such a hearing[2] and found that upon the facts available, and within a legal and moral certainty, the juvenile court judge could not have ruled differently had petitioner been afforded counsel at the waiver proceeding. Relying on the state court's findings, the district court denied Brown's petition and dismissed his cause. Brown ap-

peals from that dismissal, arguing primarily that because it was impossible to accurately reconstruct the juvenile proceeding, his conviction should be reversed.[3]

Two issues are before this court: first, whether *Kent* should be applied retroactively to the facts in the present case, and second, if the answer to the first question is yes, whether the reconstructed waiver hearing was a proper remedy for the *Kent* violation. The threshold question then is the retroactivity of *Kent.* Research of the issue reveals the Circuits to be split on this question, with the D.C. Circuit and Ninth Circuit[4] opposed to and the Fourth Circuit[5] in favor of retroactive application of *Kent.* After careful analysis of the issue, we find the reasoning of the D.C. and Ninth Circuits more persuasive and, therefore, hold that *Kent* is not to be given retroactive effect.

In *Harris v. Procunier,* 498 F.2d 576 (9th Cir. 1974), (*en banc*), the Ninth Circuit held *Kent* to be non-retroactive in a case involving a juvenile who, charged with murder, was not represented by counsel at his waiv-

1. Although the Supreme Court does not make explicit whether its holding in *Kent* is based on the District of Columbia statute involved in that case or on a constitutional mandate, courts have interpreted *Kent* to hold that the requirement of counsel at a juvenile waiver hearing is constitutionally required. *See e. g., Geboy v. Gray,* 471 F.2d 575 (7th Cir. 1973); *United States ex rel. Turner v. Rundle,* 438 F.2d 839 (3rd Cir. 1971); *Powell v. Hocker,* 453 F.2d 652 (9th Cir. 1971), *rev'd on other grounds; Harris v. Procunier,* 498 F.2d 576 (9th Cir. 1974); *Kemplen v. Maryland,* 428 F.2d 169 (4th Cir. 1970); *Mordecai v. United States,* 137 U.S. App.D.C. 198, 421 F.2d 1133 (1969) (by implication). Indeed, the Supreme Court stated in *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) that "[a]lthough our decision [in *Kent*] turned upon the language of the statute, we emphasized the necessity that 'the basic requirements of due process and fairness' be satisfied in such proceedings." *Id.* at 12, 87 S.Ct. at 1436, 18 L.Ed.2d at 527 (footnote omitted).

2. Pursuant to *Kemplen* and *Brown,* the hearing was broken down into two stages. At the first stage, the state court judge was required to examine all available evidence to determine whether, within a moral and legal certainty, the juvenile court judge could not have ruled differ-

ently had petitioner been afforded counsel at the juvenile waiver proceeding. If the state court could not conclude within a legal and moral certainty that counsel could not have influenced a different ruling on waiver, it would than proceed to a *nunc pro tunc* hearing at which it would determine what decision the juvenile court judge would probably have made had counsel been available to proffer additional information. In this case, the state court determined that the factors in favor of waiver of juvenile court jurisdiction were so strong that counsel could not have effected a different result. Accordingly, it did not proceed to the second stage of the hearing.

3. Brown also argues that the state hearing did not fairly support the state court finding and that the hearing, itself, was unfair in that he was not allowed to be present.

4. *Harris v. Procunier,* 498 F.2d 576 (9th Cir.), *cert. denied,* 419 U.S. 970, 95 S.Ct. 235, 42 L.Ed.2d 186 (1974); *Mordecai v. United States,* 137 U.S.App.D.C. 198, 421 F.2d 1133 (1969), *cert. denied,* 397 U.S. 977, 90 S.Ct. 1098, 25 L.Ed.2d 272 (1970).

5. *Kemplen v. Maryland,* 428 F.2d 169 (4th Cir. 1970).

er hearing. In making its ruling, the court relied on a three-pronged test articulated by the Supreme Court in *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), to determine whether a particular ruling should be applied retroactively. *Harris,* 498 F.2d at 578. The three criteria set down by *Stovall* were (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement officers, and (c) the effect on the administration of justice of a retroactive application of the new standards. *Stovall,* 388 U.S. at 297, 87 S.Ct. 1967. In analyzing the first criterion, the purpose to be served by the new *Kent* standards, the Ninth Circuit *en banc* panel noted that the Supreme Court has particularly examined whether the new rule bears a significant relationship to the truth-finding function of the trial:

> In distinguishing the right to counsel cases which require retroactive application from all other cases where retroactive application has been generally denied the Supreme Court stated the following: 'Where the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs the truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule has been given complete retroactive effect . . . ' (Footnotes omitted). *Williams v. United States* [401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388] at 653.

*Harris,* 498 F.2d at 578–79. Examining the *Kent* standard requiring representation by counsel at juvenile waiver hearings in light of its truth-finding function, the panel noted that a waiver hearing is not a trial at which facts that determine the guilt or the innocence of the defendant are gathered. Rather, a waiver hearing is merely a proceeding to determine whether the juvenile court should continue to assert its jurisdiction over the defendant. Accordingly, the Ninth Circuit found the first criterion, the purpose of the new standard, to mitigate against retroactive application of *Kent.*

Analysis of the second and third criteria likewise led the court to hold *Kent* not retroactive. That is, the court found that law enforcement officers had substantially relied on the pre-*Kent* standards. In addition, the court noted that the effect of a retroactive application of the new standard on the administration of justice would be "devastating." *Harris,* 498 F.2d at 579. According to Judge Barnes, writing for the majority, not only would the number of cases affected be significant, but also the juvenile court would no longer have jurisdiction over the defendant in many cases.

While the D.C. Circuit likewise held *Kent* to be nonretroactive in *Mordecai v. United States,* 137 U.S.App.D.C. 198, 421 F.2d 1133 (1969), its reasoning was somewhat different from the Ninth Circuit's in *Harris.* Judge Bazelon [6] found the first two criteria—the purpose of the new standard and past reliance by law enforcement officers on the old standard—to favor retroactive application.[7] He believed, however, that the third factor—the effect on the administration of justice—rendered retroactive application impossible. Judge Bazelon noted that not only would it be difficult to accurately reconstruct a waiver hearing after the passage of years, but also that it would be impossible to create a remedy if the juvenile court judge's decision to waive jurisdiction were determined to be incorrect:

> In this case the passage of time has made an appropriate remedy not merely inconvenient or even impracticable, but impossible. If the waiver in this case was improper because the appellant enjoyed neither the assistance of counsel nor a hearing, the correct remedy would be a new waiver hearing to determine wheth-

---

**6.** While Bazelon, Burger, and Leventhal are listed as the panel that decided *Mordecai,* a footnote indicates that Justice (then Judge) Burger did not participate in its disposition. While Judge Leventhal agreed with Judge Bazelon as to the result of the case, he disagreed with his reasoning and, therefore, wrote a separate concurring opinion. Accordingly, there is no majority opinion in the case.

**7.** Judge Leventhal would hold that each of these two criteria argue against retroactive application of *Kent.*

er the original decision by the Juvenile Court to waive its jurisdiction was correct. Since the appellant—and most others similarly situated—is now over 21 years of age, the new proceeding would have to take place in the District Court.

In *Haziel v. United States* [131 U.S. App.D.C. 298, 404 F.2d 1275, 1282 (1968)] . . . we acknowledged:

> The Juvenile Court may well decide that a hearing at this late date to determine whether . . . waiver would have been proper more than two years ago is so artificial as to be meaningless. Certainly we cannot gainsay the difficulty of determining what rehabilitative strategy might then have worked, and whether resources were then available to implement any such strategy.

The waiver in this case occurred eight years ago, and a new waiver hearing would be exponentially more artificial than in *Haziel*. *Even more important, however, is the fact that no remedy is now available if the decision to waive jurisdiction in 1961 was substantively incorrect. The appellant is now 24. He is, in simple fact, no longer a juvenile.*

*Even if nonpunitive rehabilitation in the juvenile process would have been the proper path in 1961, society can no longer offer what was then, rightly or wrongly, denied.*

*Id.* at 1138. (footnotes omitted) (emphasis added.) Likewise, Barry Wayne Brown is now 27 years old—an age that puts him well beyond the jurisdiction of the juvenile court. Like the defendant in *Mordecai*, his waiver hearing would be difficult to reconstruct after the passage of twelve years.[8] More importantly, if we should determine that the juvenile court judge's decision to waive jurisdiction was improper, we have no appropriate remedy to grant Brown. Obviously, the juvenile court cannot now take over Brown's case, in that it no longer possesses jurisdiction over him and its attempts to now offer "non-punitive" rehabilitation to a 27 year old man who has been in prison for twelve years and who has three more sentences to serve would be ludicrous. Accordingly, because we find that the absence of counsel at Brown's waiver hearing, a jurisdictional proceeding, did not impair the truth-finding function of the trial as to guilt or innocence[9] and that proper relief would be impossible to mold in

---

**8.** There was no court reporter at the original waiver hearing and, accordingly, no transcript of that proceeding. The juvenile judge who presided at the original hearing in 1965 did not recall it. The only relevant evidence before the state court judge at the second hearing was the record of the defendant as a juvenile and the testimony of the defendant's juvenile probation officer that in his opinion Barry Wayne Brown should have been tried as an adult in 1965, in that he had repeatedly failed to respond to juvenile rehabilitative techniques.

**9.** We are cognizant of Judge Hufstedler's argument in her dissenting opinion in *Harris*, 498 F.2d 376, 581, that the purpose of the rule in *Kent* favors retroactivity of that decision. In essence, Judge Hufstedler concedes that the rule announced in *Kent* does not relate to the truth-finding function of a trial, but argues that *Kent* should nonetheless be given retroactive effect in that the purpose of its rule does "relate to 'the very integrity of the fact-finding process,'" *Harris*, 498 F.2d at 582 (footnote omitted). In support of her argument, Judge Hufstedler cites *McConnell v. Rhay*, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2 (1968) (hold retroactive its decision in *Mempa v. Rhay*, 389 U.S.

128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), that defendant has a right to counsel at deferred sentencing procedures), a case relied on by the Fourth Circuit in *Kemplen v. Maryland*, 428 F.2d 169 (4th Cir. 1970). While a sentencing procedure is somewhat analogous to a waiver hearing, in that a decision affecting the ultimate punishment for the crime is involved and that no truth-finding functions relating to guilt or innocence are involved, McConnell is clearly a different case. If a sentencing procedure has been found to violate *Mempa*, the remedy is clear: hold a second sentencing hearing and allow defendant to be represented by counsel. The problem in the present case is that no appropriate remedy exists.

Accordingly, in response to Judge Hufstedler's observations, we do not here hold that the "truth-finding" function *alone* of a new rule determines its retroactivity. What we do hold is that the absence of a remedy coupled with the fact that the *Kent* rule does not call into question the accuracy of a guilty verdict obtained in a proceeding held violative of *Kent*, leads us to conclude that *Kent* should not be applied retroactively.

that Brown's alleged ultimate deprivation—the right to be tried in juvenile court—could not now be remedied, we hold *Kent* to be nonretroactive and affirm the district court's denial of his petition.