**Victor Eugene RIOS, Petitioner-Appellant,**

v.

**Abelico CHAVEZ, Supt. et al., Respondent-Appellee.**

**No. 78–3054.**

United States Court of Appeals, Ninth Circuit.

Feb. 13, 1980.

Rehearing Denied June 18, 1980.

and

Jeb Scully, Sacramento, Cal., argued for petitioner-appellant; Jo Ellen L. Mitchell, Sacramento, Cal., on the brief.

Shirley Nelson, Sacramento, Cal., for respondent-appellee.

Before GOODWIN and ANDERSON, Circuit Judges, and CLAIBORNE,* District Judge.

J. BLAINE ANDERSON, Circuit Judge:

Petitioner Victor Eugene Rios appeals a judgment below denying his petition for a writ of habeas corpus. Finding that Rios was twice placed in jeopardy for the same offense, we reverse the judgment with instructions that the writ be issued.

I. *BACKGROUND*

On September 25, 1969, a group of juveniles robbed a drive-in restaurant located in Sacramento, California. In the course of that robbery, the owner of the drive-in was killed by a gunshot, and his wife was pistol-whipped on her left arm and leg. Shortly thereafter, Victor Eugene Rios, a juvenile at the time, and three other juveniles were arrested in connection with the homicide, robbery, and assault at the drive-in.

On October 20, 1969, a hearing was conducted by the Superior Court of the State of California in and for the County of Sacramento, sitting as the Juvenile Court. At the hearing, evidence was heard by the judge regarding the alleged crime and the amenability of Rios and three of his alleged accomplices in the murder-robbery to care and treatment under the California juvenile justice system. Rios and his companions were each separately represented by counsel at this hearing, and a deputy district attorney appeared and presented the evidence against the four juveniles.

At the termination of the hearing, the presiding judge directed that all four of the juveniles be prosecuted as adults for their alleged participation in the crime. With regard to Rios, the judge entered the following findings, which were typical of those entered against all of the four:

"The Court has given this case much consideration; accordingly, [sic] finds that Victor Eugene Rios is a person described in Section 602 of the Welfare and Institutions Code, he was 16 years of age or older at the time of the alleged commission of such offense, and further, said minor is not a fit and proper subject to be dealt with under the Juvenile Court Law in that said minor would not be amenable to the care, treatment and training program available through the facilities of the Juvenile Court."

Hearing Transcript, p. 193 (hereafter "H.T.").[1]

The judge then directed that the District Attorney of Sacramento County prosecute Rios in state court as an adult. A similar directive was given for the prosecution of Rios' companions.

---

* The Honorable HARRY E. CLAIBORNE, United States District Judge, District of Nevada, sitting by designation.

1. All references to the juvenile court hearing transcript will be designated as the "Hearing Transcript" or "H.T."

In finding that Rios was "a person described in Section 602 of the Welfare and Institutions Code," the judge was making a finding pursuant to California Welfare and Institutions Code § 602 (1966), which was then in force in California and provided that:

"Any person under the age of 21 years *who violates any law of this state* or of the United States or any ordinance of any city or county of this state defining crime or who, after having been found by the juvenile court to be a person described by Section 601, fails to obey any lawful order of the juvenile court, is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court." (Emphasis added)

Cal.Welf. & Inst'ns Code § 602 (1966).

Section 602 operated in conjunction with a larger statutory scheme defining the jurisdiction of California's juvenile court system and granting judges certain dispositional options for juveniles charged with criminal offenses. The hearing at which the district attorney was directed to prosecute Rios as an adult was held pursuant to Sections 701[2] and 702[3] of the Welfare and Institutions Code. Section 707 of the Code granted the juvenile judge the authority to determine at such a hearing whether a juvenile charged with a criminal offense should be dealt with under the juvenile justice system or should be prosecuted as an adult, providing in pertinent part:

"At any time during a hearing upon a petition alleging that a minor is, by reason of violation of any criminal statute or ordinance, a person described in Section 602, when substantial evidence has been adduced to support a finding that the minor was 16 years of age or older at the time of the alleged commission of such offense and that the minor would not be amenable to the care, treatment and training program available through the facilities of the juvenile court, . . ., the court may make a finding noted in the minutes of the court that the minor is not a fit and proper subject to be dealt with under this chapter, and the court shall direct the district attorney or other appropriate prosecuting officer to prosecute the person under the applicable

2. "At the hearing, the court shall first consider only the question whether the minor is a person described by Sections 600, 601, or 602, and for this purpose, any matter or information relevant and material to the circumstances or acts which are alleged to bring him within the jurisdiction of the juvenile court is admissible and may be received in evidence; however, a preponderance of evidence, legally admissible in the trial of criminal cases, must be adduced to support a finding that the minor is a person described by Section 602, and a preponderance of evidence, legally admissible in the trial of civil cases, must be adduced to support a finding that the minor is a person described by Section 600 or 601. When it appears that the minor has made an extrajudicial admission or confession and denies the same at the hearing, the court may continue the hearing for not to exceed seven days to enable the probation officer to subpoena witnesses to attend the hearing to prove the allegations of the petition. If the minor is not represented by counsel at the hearing, it shall be deemed that objections that could have been made to the evidence were made."

Cal.Welf. and Inst'ns Code § 701 (1966).

3. "After hearing such evidence, the court shall make a finding, noted in the minutes of the court, whether or not the minor is a person described by Sections 600, 601, or 602. If it finds that the minor is not such a person, it shall order that the petition be dismissed and the minor be discharged from any detention or restriction theretofore ordered. If the court finds that the minor is such a person, it shall make and enter its findings and order accordingly and shall then proceed to hear evidence on the question of the proper disposition to be made of the minor. Prior to doing so, it may continue the hearing, if necessary, to receive the social study of the probation officer or to receive other evidence on its own motion or the motion of a parent or guardian for not to exceed 10 judicial days if the minor is detained during such continuance, and if the minor is not detained, it may continue the hearing to a date not later than 30 days after the date of filing of the petition. The court may, for good cause shown continue the hearing for an additional 15 days, if the minor is not detained. The court may make such order for detention of the minor or his release from detention, during the period of the continuance, as is appropriate."

Cal.Welf. and Inst'ns Code § 702 (Supp.1968).

criminal statute or ordinance and thereafter dismiss the petition . . . ." Calif.Welf. & Inst'ns Code § 707 (Supp. 1967).

Following the judge's finding that Rios was not amenable to the care, treatment and training program available through the facilities of the juvenile court, Rios was prosecuted in Superior Court and was convicted by a jury of robbery and murder on January 15, 1970. Rios prosecuted an unsuccessful appeal after his conviction, and also failed in an attempt to obtain state habeas corpus relief on grounds irrelevant to the present appeal.

Subsequent to Rios' conviction, the U.S. Supreme Court held in *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975), that California's juvenile justice statutes were unconstitutional insofar as they violated the Fifth Amendment's guarantee against double jeopardy. The Court, in a unanimous opinion authored by Chief Justice Burger, found that the initial dispositional hearing and determination that a juvenile was a person described by Section 602 of the Code involved an adjudication of the underlying offense and that jeopardy attached at the hearing. A subsequent criminal prosecution therefore, would violate the guarantee against double jeopardy under *Breed*.

Following *Breed*, Rios instituted another attack on his confinement by way of habeas corpus, alleging that the prosecution in Superior Court violated the double jeopardy clause. After properly exhausting his state remedies, Rios filed the instant petition in district court, and now appeals the denial. Rios' application for Certificate of Probable Cause and Notice of Appeal were timely filed.

## II. *JURISDICTION*

The district court had jurisdiction to entertain Rios' petition pursuant to 28 U.S.C. § 2254. Our jurisdiction on appeal is based upon 28 U.S.C. § 2253.

## III. *STANDARD OF REVIEW*

Normally, on appeal from the denial of a petition for writ of habeas corpus, we are guided by the "clearly erroneous" standard. *See, e. g., Greenfield v. Gunn*, 556 F.2d 935, 938 (9th Cir. 1977), *cert. denied*, 434 U.S. 928, 98 S.Ct. 413, 54 L.Ed.2d 288 (1977). Where the record, however, is wholly documentary, the court on appeal is bound neither by the trial court's conclusions of law, nor by its interpretation of the evidence. *Johnson v. Salisbury*, 448 F.2d 374, 377 (6th Cir. 1971), *cert. denied*, 405 U.S. 928, 92 S.Ct. 979, 30 L.Ed.2d 801 (1972). In the present case, the record consists wholly of the transcript of Rios' October 1969, hearing before the juvenile court. We need not fix with precision the standard employed here, however, because we find the trial court's denial of Rios' petition erroneous under even the stricter standard.

## IV. *ISSUES ON APPEAL*

Rios' appeal raises two issues:

1. Whether the Supreme Court's ruling in *Breed v. Jones, supra*, may be applied retroactively to a juvenile hearing conducted in October 1969; and

2. Whether jeopardy attached at Rios' hearing under the standards set forth in *Breed*.

## V. *DISCUSSION*

In finding that jeopardy did not attach at Rios' 1969 hearing, the district court held that the "sole purpose" of the hearing was to determine whether Rios was a fit and proper subject to be dealt with under California's juvenile justice statutes. The court did not consider the question of the retroactive application of *Breed v. Jones*.

### A. *Retroactive Effect of Breed v. Jones*

■ The state conceded at oral argument that *Breed v. Jones* is applicable retroactively in this case. We so find, and add only a few comments to clarify our holding.

There is a split of authority among other circuits on the issue of whether *Breed* should be applied retroactively. In *Jackson v. Justices of Superior Court of Massachusetts*, 549 F.2d 215 (1st Cir. 1977), *cert. denied*, 430 U.S. 975, 97 S.Ct. 1666, 52 L.Ed.2d 370 (1977), the court refused to apply *Breed* retroactively to a Massachu-

setts juvenile court scheme similar to the California system. In *Holt v. Black*, 550 F.2d 1061 (6th Cir. 1977), *cert. denied*, 432 U.S. 910, 97 S.Ct. 2960, 53 L.Ed.2d 1084 (1977), on the other hand, the Sixth Circuit applied *Breed* retroactively in voiding a 1973 manslaughter conviction which had followed an adjudicatory juvenile hearing.

We are inclined to follow the rationale of the Sixth Circuit. Retroactive application of double jeopardy standards is governed by the Supreme Court's decision in *Robinson v. Neil*, 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973), and not by the general retroactivity standards announced in *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). In *Robinson*, the Court drew a distinction between procedures which assure fairness at trial, and the ban on double jeopardy which prevents a trial from occurring in the first place. 409 U.S. 505, 509, 93 S.Ct. 876, 878, 35 L.Ed.2d 29. The clear implication of *Robinson* is that lower courts are to be somewhat more liberal in applying double jeopardy decisions retroactively than would be true under the *Linkletter* standard. By the same token, the element of reliance by states upon prior decisions and the foreseeability of the decision sought to be applied retroactively is not wholly absent from our analysis under *Robinson*. *See id.* at 509, 510, 93 S.Ct. at 878.

In the present case, the basic principles which led to *Breed v. Jones* were established prior to October 1969. The Supreme Court had already indicated that juvenile proceedings were to be afforded a wide range of due process guarantees in *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), and had ruled that the double jeopardy clause was applicable to the states through the Fourteenth Amendment in *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). Thus, while *Breed* may not be retroactive in *all* cases, we find that it was clearly applicable to a hearing held in late 1969.

**B.** *Attachment of Jeopardy*

▪ The Supreme Court based its conclusion that jeopardy attached at the juvenile hearing in *Breed* largely upon the language of Section 602 of the Welfare and Institutions Code, which appeared to compel an adjudication of the underlying crime at the initial juvenile hearing. Section 602 was, by its terms, a jurisdictional statute; yet it only granted jurisdiction over "[a]ny person under the age of 21 years who violates any law of this state . . . ." The statute thus required at least a preliminary determination that a minor had violated a law of the State of California before the juvenile court could assert jurisdiction.

The Court in *Breed* found that the risk of adjudication of the underlying criminal offense compelled the conclusion that jeopardy attached at the jurisdictional hearing. As the Court noted:

"We believe it is simply too late in the day to conclude, as did the District Court in this case, that a juvenile is not put in jeopardy at a proceeding whose object is to determine whether he has committed acts that violate a criminal law and whose potential consequences include both the stigma inherent in such a determination and the deprivation of liberty for many years."

421 U.S. 519, 529, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346.

The Court further observed that the policies underlying the ban on double jeopardy require a consideration of the impact of the proceedings upon the person charged with an offense in determining whether jeopardy attaches at a given stage. The court underscored the "heavy pressures and burdens— psychological, physical, and financial . . ," *id.* at 530, 95 S.Ct. at 1786, which a proceeding whose object is to adjudicate a charge that a person has violated a criminal statute can impose upon the individual who must face that charge. Such pressures, according to the Court, may be especially pronounced in the case of a juvenile. *See id.* at 530, 531, 95 S.Ct. at 1786. The Court thus concluded that jeopardy attached at any hearing in which a jurisdictional determination under Section 602 could be made.

*Breed*, however, did not preclude the use of a preliminary jurisdictional hearing *per se* in prosecutions of juveniles. The decision sanctioned the use of "transfer" hearings for the sole purpose of determining whether an alleged juvenile offender would be amenable to treatment under the juvenile justice system or whether a juvenile should be prosecuted in state courts of general criminal jurisdiction. The Court recognized the need for flexibility in administering such hearings, noting that:

> "We require only that, whatever the relevant criteria, and whatever the evidence demanded, a State determine whether it wants to treat a juvenile within the juvenile-court system before entering upon a proceeding that may result in an adjudication that he has violated a criminal law and in a substantial deprivation of liberty, rather than subject him to the expense, delay, strain, and embarrassment of two such proceedings."

*Id.* at 537, 538, 95 S.Ct. at 1790. In a footnote to *Breed*, the Court explained that its decision did not preclude the introduction of evidence pertaining to the alleged offense for the purpose of determining amenability to the juvenile justice system so long as the crime itself is not adjudicated, something akin to a finding of "probable cause" to believe that the juvenile had committed the acts charged. *Id.* at 538, n.18, 95 S.Ct. at 1790, n.18.

The state here contends that Rios was not subjected to an adjudicatory hearing in October 1969, but rather that the Court conducted only a transfer hearing within the meaning of *Breed v. Jones.* The state points to statements made during the hearing by both court and counsel which it contends are indicative of an intent to hold only a fitness hearing, and not to adjudicate the underlying charges of murder and robbery. Most prominent among these are

statements by the presiding judge to the effect that the sole purpose of the hearing was to determine whether the juvenile court would take jurisdiction over Rios and his companions,[4] and an admonition by the judge to the prosecuting attorney at the opening of the hearing not to ask for admissions or denials of guilt.[5] The state also argues the significance of statements by defense counsel which evidence their understanding that the guilt of their clients was not at issue.[6]

Few federal decisions since *Breed* have construed the term "transfer hearing." The Supreme Court recently declined the opportunity to clarify what type of transfer or fitness hearing is permissible after *Breed. See Swisher v. Brady,* 438 U.S. 204, 215, n.12, 98 S.Ct. 2699, 2706, n.12, 57 L.Ed.2d 705 (1978). Our circuit has considered the question in one prior appeal, *United States v. Martinez,* 536 F.2d 886 (9th Cir. 1976), *cert. denied,* 429 U.S. 907, 97 S.Ct. 273, 50 L.Ed.2d 189 (1976). The court found in *Martinez* that a California juvenile proceeding held pursuant to Section 707 of the Welfare and Institutions Code, *supra,* was properly conducted as a "transfer hearing" at which jeopardy did not initially attach. The opinion in *Martinez,* however, does not indicate the details of the hearing, and we are left with little basis for comparison with the present case. We cannot say that *Martinez* dictates any particular result in the present case. Other federal decisions finding that a constitutionally permissible transfer hearing took place, and rejecting a petitioner's claim of a double jeopardy violation arose in the context of statutory juvenile justice schemes different than that in force in California, and are distinguishable on that basis. *See Hall v. McKenzie,* 575 F.2d 481 (4th Cir. 1978); *Government of Virgin Islands v. Smith,* 558 F.2d 691 (3d Cir. 1977), *cert. denied,* 434 U.S. 957, 98

---

4. H.T. 5, 8.

5. *Id.* at 5.

6. Mr. Douglas Greer, representing one of Rios' companions, acknowledged at one point that ". . . this is not an innocence-or-guilt proceeding, your Honor." *Id.* at 134. The state also points to considerable cross-examination by Rios' counsel of a probation officer on the issue of Rios' amenability to treatment as a juvenile as evidence of an understanding that all parties understood the proceeding to be nothing more than a fitness hearing.

S.Ct. 486, 54 L.Ed.2d 316 (1977); *McGaha v. State of Tennessee*, 461 F.Supp. 360 (E.D. Tenn.1978).

Ultimately, any case involving the question of the attachment of jeopardy under *Breed* must turn on its own facts. In the present case, we are not persuaded by the state's attempt to distinguish Rios' 1969 hearing from the procedure proscribed by *Breed*. The judge's references to "jurisdiction" must be read in light of Section 602's definition of jurisdiction as including a determination that the minor had committed the offense charged. A reading of the transcript leaves one with the distinct impression that Rios was exposed to the kind of "risk" which *Breed* prohibits. The transcript includes 194 pages of time actually spent at the hearing, the first 140 of which deal exclusively with evidence of the alleged offense. The details of the murder-robbery are laid out in graphic detail by the victim's wife during that portion of the transcript. The remaining evidence dealt with the amenability of Rios and his companions to care and treatment under the juvenile justice system.

Although we cannot express thorough conviction on the point, the broadly-stated principles of *Breed v. Jones* lead us to conclude that jeopardy attached at the October 1969 hearing. We feel bound by those broadly-stated principles and the striking "sameness" of the two cases. Section 602 clearly opened up the possibility that Rios' *guilt as a juvenile would be adjudicated at that hearing.* Indeed, the prosecution put on an impressive case which was highly persuasive of Rios' guilt. The judge's ultimate determination that Rios' case should be dealt with by another branch of the state judiciary in no way diminishes the risk of adjudication which was present throughout the hearing. Accordingly, we are left with no choice but to conclude that Rios was placed in jeopardy at the initial hearing and that his subsequent prosecution for the same offense violated the guarantee against double jeopardy. The findings of the trial judge below on this issue were clearly erroneous.

## VI. CONCLUSION

The judgment of the court below is

REVERSED, with instructions that the writ issue.

GOODWIN, Circuit Judge, specially, concurring.

The ultimate disillusionment with the juvenile justice scheme mentioned in *McKeiver v. Pennsylvania*, 403 U.S. 528, 551, 91 S.Ct. 1976, 1989, 29 L.Ed.2d 647 (1971), now seems inevitable. When I concurred in this court's decision in *Jones v. Breed*, 497 F.2d 1160 (9th Cir. 1974), we had before us a case in which the California juvenile court had completed an adjudicatory hearing with a finding that Jones had in fact committed the armed robberies of which he had been accused. We held that this finding of criminal conduct constituted jeopardy within the meaning of the Fifth Amendment, as applied to the states through the Fourteenth. The Supreme Court, in effect, affirmed. *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975). The Court also said that while "transfer hearings" could be had without placing the juvenile in jeopardy, *id.* at 538, n.18, 95 S.Ct. at 1790, n.18, the hearing then under consideration had indeed been one in which jeopardy had attached.

The present case had its beginnings long before the decision in *Breed v. Jones* came down. While I agree that reversal cannot be avoided by affording *Breed* prospective effect, it is only fair to point out that the California juvenile court made a valiant effort to keep from conferring jeopardy on young Rios.

The juvenile court held the hearing required by *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1965). The court gave Rios all the due process required by *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). It was obvious that the court was not considering an ordinary delinquent child.

The juvenile court carefully and expressly refrained from making any finding about whether Rios had in fact robbed and killed,

but instead made the limited express finding, which seems eminently reasonable on the record, that the child would not benefit from treatment as a juvenile.

Nevertheless, we are still confronted with the *Breed* rationale that "a possibility" of an adjudication of culpability had been present under California's statutory scheme in the Rios hearing. The juvenile court, at the conclusion of the transfer hearing, could have ruled that robbery and murder were acts of juvenile delinquency (which they probably were) and that the juvenile was amenable to treatment under the California Welfare & Institutions Code (which he probably was not). This stretches "could have" about as far as it can be stretched. In cases processed by a state court before *Breed* came down, and in which the state court had specifically limited its inquiry to fitness for juvenile, as opposed to adult, future proceedings, I see no constitutional barrier, but for the language in *Breed*, to treating the hearing as any other preliminary hearing convened in order to determine what to do next.

There was, in the Rios proceeding, no finding of guilt, of delinquency, or even of probable cause. There was not even an inquiry into guilt. The court merely made a finding that the juvenile was unfit for juvenile court and should proceed to adult court (admittedly, in large part, because of the nature of the charges).

If *Breed* compels us to hold that any juvenile transfer hearing held in California under § 702 conferred jeopardy upon the child because of the possibility that he could have been declared a delinquent under § 602 regardless of the actual nature of the inquiry or of its findings, then we are forced to hold that California courts never had any option at all during the years in question.

If we have read *Breed* correctly, then the only choice the juvenile judges really had when accused teen-age murderers came before them was either to find that the children were delinquent and send them to juvenile hall for the balance of their minority, or to turn them loose. If any § 701

inquiry concerning what to do with such a child would confer jeopardy, then no child could ever be treated as anything but a juvenile. Thus the whole notion of a fitness, or transfer hearing, was a mockery all along. That result is particularly piquant in light of the efforts the states had been making in the aftermath of *Kent v. United States, supra,* to make their transfer hearings conform as nearly as possible to the due process requirements of adult criminal trials.

I am reluctant to read the *Breed* case this way, but the language of the case affords little room for any other reading. It would make more sense to treat the actual hearing that was conducted in Rios's case as a transfer hearing and nothing more, despite the undeniable fact that Rios, during that hearing, faced the theoretical risk that the court might have declared him delinquent and so have precluded any meaningful liability for the alleged robberies and murders. But, under the compulsion of *Breed v. Jones, supra,* I concur.

I am authorized to note that Judges ANDERSON and CLAIBORNE also concur in the views expressed herein.