**David C. BARKER,**
**Petitioner–Appellant,**

v.

**Wayne ESTELLE, Warden,**
**Respondent–Appellee.**

No. 89–15232.

United States Court of Appeals,
Ninth Circuit.

Submitted Nov. 14, 1989 *.

Decided Sept. 11, 1990.

introduce into the record substantial evidence that all requirements for section 8(f) relief are met in this matter.

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

David C. Barker, Tracy, Cal., petitioner-appellant, pro se.

Blair W. Hoffman, Deputy Atty. Gen., San Francisco, Cal., for respondent-appellee.

Before FARRIS, PREGERSON and RYMER, Circuit Judges.

PREGERSON, Circuit Judge:

Petitioner–Appellant David Christian Barker appeals pro se a district court's order denying his petition for writ of habeas corpus. Barker contends that his prosecution in California state court for three murders violated the Double Jeopardy Clause because jeopardy had attached at his Juvenile Court detention and fitness hearings. Barker also contends that he was deprived of due process at his juvenile detention and fitness hearings when the deputy district attorney introduced into evidence statements of an adult accomplice over the objection of Barker's attorney that the introduction of these statements violated Barker's right to confront and cross-examine the accomplice/declarant. We affirm.

## BACKGROUND

David Christian Barker was arrested on August 24, 1976, along with his neighbor and friend Barry Braeske, for the murders of Braeske's parents and grandfather. Braeske had confessed to the police that he and David committed the murders.

Because Barker was sixteen years old at the time, his case was handled according to standard California Juvenile Court procedure. First, he was given a detention hearing[1] in juvenile court on September 22, 1976, where it was determined that the district attorney had made out a "prima facie case in the totality of the testimony" and that Barker should be detained pending the jurisdictional hearing "in view of the immediate and urgent necessity for the protection of the persons or properties of others." Barker was represented by counsel at this detention hearing.

At the detention hearing, Police Detective Cervi testified about the crime scene and about exculpatory statements made by Barker regarding his activities with Braeske on the night of the murders. Cervi also testified about his interview with Braeske, and a transcript of a taped statement from that interview was introduced into evidence. Barker's attorney cross-examined Cervi but objected to the introduction of Braeske's statements as a denial of Barker's right of confrontation under the Sixth and Fourteenth Amendments. His objection was overruled.

On October 15, 1976, a fitness hearing[2] was held in which it was determined that

1. See Cal.Welf. & Inst.Code (hereinafter "W & I") §§ 630, 632, 635. At the time of Barker's detention hearing, § 635 provided:

   The court will examine such minor, his parent, guardian, or other person having relevant knowledge, hear such relevant evidence as the minor his parent or guardian or their counsel desires to present, and unless it appears that such minor has violated an order of the juvenile court or has escaped from the commitment of the juvenile court or that it is a matter of immediate and urgent necessity for the protection of such minor or the person or property of another that he be detained or that such minor is likely to flee to avoid the jurisdiction of the court, the court shall make its order releasing such minor from custody. Act of July 14, 1961, ch. 1616, 1961 Cal.Stat. 3475 (current version at Cal.Welf. & Inst.Code § 635 (West 1984)).

   At the detention hearing, the state is required to present a prima facie case that the juvenile has committed the offense alleged in the petition. In re William M., 3 Cal.3d 16, 28, 473 P.2d 737, 745–46, 89 Cal.Rptr. 33, 41–42 (1970).

2. The fitness hearing, which is also referred to as a "transfer" or "certification" hearing, was held pursuant to Act of July 14, 1961, ch. 1616, 1961 Cal.Stat. 3475 (current version at Cal.Welf. & Inst.Code § 635 (West 1984)), which at the time of Barker's hearing provided:

   In any case in which a minor is alleged to be a person described in Section 602 by reason of the violation, when he was 16 years of age or older, of any criminal statute or ordinance, upon motion of the petitioner made prior to the attachment of jeopardy the court shall cause the probation officer to investigate and submit a report on the behavior patterns and social history of the minor being considered for unfitness. Following submission and consideration of the report, and of any other relevant evidence which the petitioner or the minor may wish to submit the juvenile court may find that the minor is not a fit and proper subject to be dealt with under the juvenile court law if it concludes that the minor would not be amenable to the care, treatment and training program available through the facilities of the juvenile court, based upon an evaluation of the following criteria:
   (a) The degree of criminal sophistication exhibited by the minor.
   (b) Whether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction.

Barker should be tried as an adult. The court found that

> [Barker was] not a fit and proper person to be tried in the Juvenile Court and ... would not be amenable to the care, treatment and training programs available through the facilities of the Juvenile Court, based upon the circumstances and gravity of the offense alleged to have been committed by the minor and the degree of criminal sophistication allegedly exhibited by the minor in the offenses charged.

Again, Barker was represented by counsel. At this hearing, a behavioral report prepared by a probation officer was admitted into evidence that recommended Barker be tried as an adult.

It appears that the behavioral report contained a statement by Braeske, given to the deputy district attorney, involving Barker in the planning, execution, and concealment of the murders. Barker's counsel again objected unsuccessfully to the introduction of Braeske's statements as hearsay and as a violation of Barker's right, under the Sixth and Fourteenth Amendments, to confront and cross-examine the witnesses against him. The behavioral report also contained information about Barker's additional misconduct, employment, education,

and friends. After the written behavioral report was introduced into evidence and was orally summarized by the court officer, Barker's attorney called witnesses. Barker's attorney was offered the opportunity for a continuance in order to cross-examine the probation officer who had prepared the behavioral report, but declined the judge's offer.

Barker was subsequently transferred to and tried in an adult court where he was convicted of one count of first degree, and two counts of second degree murder. He was sentenced to life in prison. Barker's conviction was upheld by the California Court of Appeals, *see People v. Barker,* 94 Cal.App.3d 321, 156 Cal.Rptr. 407 (1979), and the California Supreme Court denied rehearing.

Barker petitioned the California state courts for writ of habeas corpus. The Superior Court, which is the state trial court, denied the writ on alternative grounds—it held the claims procedurally barred because they could have been but were not raised on direct appeal, and dismissed the double jeopardy claim on the merits. The California Court of Appeals and the California Supreme Court both denied the petitions without stating reasons.[3]

---

(c) The minor's previous delinquent history.
(d) Success of previous attempts by the juvenile court to rehabilitate the minor.
(e) The circumstances and gravity of the offense alleged to have been committed by the minor.
  A determination that the minor is not a fit and proper subject to be dealt with under the juvenile court law may be based on any one or a combination of the factors set forth above, which shall be recited in the order of unfitness. In any case in which a hearing has been noticed pursuant to this section, the court shall postpone the taking of a plea to the petition until the conclusion of the fitness hearing and no plea which may already have been entered shall constitute evidence at such hearing.
Act of Oct. 1, 1975, ch. 1266, 1975 Cal.Stat. 3325 (emphasis added) (current version at Cal.Welf. & Inst.Code § 707 (West 1984 & Supp.1990)).

**3.** It is well settled that when a petitioner could have raised a constitutional claim in state court but did not and is now barred from doing so by a state rule of procedure, he has procedurally defaulted on his claim. *Tacho v. Martinez,* 862 F.2d 1376, 1378 (9th Cir.1988) (citing *Murray v.*

*Carrier,* 477 U.S. 478, 485, 106 S.Ct. 2639, 2643, 91 L.Ed.2d 397 (1986); *Wainwright v. Sykes,* 433 U.S. 72, 86–87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977)). The California Attorney General notes in his brief that California did not allege a procedural default in this case because decisions of the Ninth Circuit at the time the answer to the petition was filed precluded the successful assertion of such a claim. *See Bradford v. Stone,* 594 F.2d 1294, 1296 n. 2 (9th Cir.1979) (holding that where a state court denies a habeas petitioner's claim on alternate grounds, reaching a decision on the merits as well as invoking a procedural bar, a federal court may reach the merits of the claim); *see also Tacho,* 862 F.2d at 1378.
  The Attorney General advises us, however, that the Supreme Court has since held that where a state court relies on a procedural default as an alternative holding, even if it also reaches the merits, the procedural default generally bars a federal court from considering the claim. *Harris v. Reed,* 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 1044 n. 10, 103 L.Ed.2d 308 (1989).
  While the Court in *Harris* certainly noted that an alternative state court holding based on pro-

Barker then filed a habeas petition in Federal District Court for the Northern District of California, alleging he was twice put in jeopardy, that he was deprived of due process at his fitness and detention hearings, and that California state courts violated his rights by not recognizing the validity of his claims. The district court denied the petition, finding Barker's claims "utterly without merit." The court held that the taking of evidence by the juvenile court at the fitness hearing did not constitute attachment of jeopardy under *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975). The court also found that, since fitness hearings need not meet the standards of a criminal trial, or even of the usual administrative hearing, *Kent v. United States*, 383 U.S. 541, 562, 86 S.Ct. 1045, 1057, 16 L.Ed.2d 84 (1966), Barker was not deprived of due process.

Barker appeals the district court's denial of his habeas petition, contending that his prosecution in California Superior Court violated the Double Jeopardy Clause because jeopardy had attached at his juvenile court detention and fitness hearings. Barker also contends that he was deprived of due process at his juvenile detention and fitness hearings by the introduction of Braeske's statements without the opportunity to confront and cross-examine Braeske.

## STANDARD OF REVIEW

■ The decision to deny a petition for habeas corpus is reviewed de novo. *Norris*

cedural default would preclude federal review of the claim, absent cause and prejudice, this statement was made in the context of a broader holding relating to the *"last state court"* rendering a judgment in a case." 109 S.Ct. at 1043 (emphasis added). "[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Id.* (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 327, 105 S.Ct. 2633, 2638, 86 L.Ed.2d 231 (1985)).

Here, although the state trial court alternatively denied Barker's petition based on procedural default, the last state court to render judgment in the case was the California Supreme Court. Barker filed an original habeas petition in the California Supreme Court, and the court denied the petition without citation or comment. In *Nunnemaker v. Ylst*, 904 F.2d 473 (9th

*v. Risley*, 878 F.2d 1178, 1180 (9th Cir. 1989).

## DISCUSSION

### I. Double Jeopardy

In *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975), the Supreme Court held that a juvenile is put in jeopardy at a juvenile court adjudicatory hearing [4]—at a proceeding "whose object is to determine whether he has committed criminal acts and whose potential consequences include both the stigma inherent in such a determination and the deprivation of liberty for many years." *Id.* at 529, 95 S.Ct. at 1785. The Court concluded, therefore, that after the trier of fact at an adjudicatory hearing begins to hear evidence against a juvenile, a subsequent transfer and prosecution of that juvenile in adult court violates the Double Jeopardy Clause of the Fifth Amendment as applied to the States through the Fourteenth Amendment. *Id.* at 531, 541, 95 S.Ct. at 1786, 1791.

Under review in *Breed* was a former California statutory scheme that permitted a juvenile court to determine at any time during the adjudicatory hearing that the juvenile should be transferred to an adult court. The statutory scheme involved the interrelationship of four sections of the Cal. Welf. & Inst.Code (W & I) as they appeared at the time of Jones' hearing: § 602,[5] § 701,[6] § 702,[7] and § 707.[8]

Cir.1990), we held that "[t]he rationale and plain language of *Harris* require that, where ... a state supreme court does not plainly state in its summary denial of an original habeas petition that its ruling rests on a state procedural bar, federal habeas review is not precluded." *Id.* at 476. Therefore, under *Harris* and *Nunnemaker*, we are not precluded from addressing the merits of Barker's federal habeas claims.

4. This type of hearing is also known as a jurisdictional or delinquency hearing. *See* W & I § 701.

5. At the time of the hearing in *Breed*, W & I § 602 (1966) provided:

Any person under the age of 21 years who violates any law of this State or of the United States or any ordinance of any city or county of this State defining crime or who, after

The habeas petitioner in *Breed* had been subjected as a juvenile to a full adjudicatory hearing pursuant to § 701, where the juvenile court found he had committed the alleged criminal acts. It was *after* this adjudication that the juvenile court determined, pursuant to § 707, that he should be transferred to an adult court because he was "not amenable to the care, treatment, and training program through the facilities of the juvenile court." *Breed*, 421 U.S. at 521–23, 95 S.Ct. at 1781–82. The Court held that his subsequent prosecution in adult court violated the Double Jeopardy Clause.

■ The Court in *Breed* noted, however, the importance of the availability of a procedure for transferring a juvenile to an adult court. *Id.* at 535, 95 S.Ct. at 1789. It stressed that its holding does not preclude the juvenile court from conducting such a transfer hearing, even if substantial evidence that the juvenile committed the offense charged is a prerequisite to the transfer, as long as the hearing does not involve the risk of an adjudication of guilt. *Id.* at

536–539 & n. 18, 95 S.Ct. at 1789–90 & n. 18.

> We require only that, whatever the relevant criteria, and whatever the evidence demanded [at a fitness hearing], a State determine whether it wants to treat a juvenile within the juvenile court system *before entering upon a proceeding that may result in an adjudication that he has violated a criminal law* and in a substantial deprivation of liberty, rather than subject him to the expense, delay, strain, and embarrassment of two such proceedings [in juvenile and then in adult court].

*Id.* at 537–38, 95 S.Ct. at 1789–90 (emphasis added).

Our circuit has applied and interpreted *Breed's* holding only twice in the context of California Law. In *United States v. Martinez*, 536 F.2d 886 (9th Cir.), *cert. denied*, 429 U.S. 907, 97 S.Ct. 273, 50 L.Ed.2d 189 (1976), we held that jeopardy did not attach at a W & I § 707 fitness hearing where the record revealed no adjudicatory consideration nor determination of guilt or innocence. *Id.* at 891. Distinguishing the facts in *Martinez* from those in *Breed*, we point-

---

having been found by the juvenile court to be a person described by Section 601, fails to obey any lawful order of the juvenile court, is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court.

**6.** At the time of the hearing in *Breed*, W & I § 701 (1966) provided in relevant part:

> At the hearing, the court shall first consider only the question whether the minor is a person described by Sections 600, 601, or 602, and for this purpose, any matter or information relevant and material to the circumstances or acts which are alleged to bring him within the jurisdiction of the juvenile court is admissible and may be received in evidence; however, a preponderance of evidence, legally admissible in the trial of criminal cases, must be adduced to support a finding that the minor is a person described by Section 602....

This is known as the adjudicatory or jurisdictional hearing.

**7.** At the time of the hearing in *Breed*, W & I § 702 (Supp.1968) provided in part:

> After hearing such evidence, the court shall make a finding, noted in the minutes of the court, whether or not the minor is a person described by Section 600, 601, or 602. If it finds that the minor is not such a person, it shall order that the petition be dismissed and

the minor be discharged from any detention or restriction theretofore ordered. If the court finds that the minor is such a person, it shall make and enter its findings and order accordingly and shall then proceed to hear evidence on the question of the proper disposition to be made of the minor.

**8.** At the time, W & I § 707 (Supp.1967) provided in part:

> *At any time during a hearing upon a petition alleging that a minor is, by reason of violation of any criminal statute or ordinance, a person described in Section 602,* when substantial evidence has been adduced to support a finding that the minor was 16 years of age or older at the time of the alleged commission of such offense and that the minor would not be amenable to the care, treatment and training program available through the facilities of the juvenile court ... the court may make a finding noted in the minutes of the court that the minor is not a fit and proper subject to be dealt with under this chapter, and the court shall direct the district attorney ... to prosecute the person under the applicable criminal statute ... and thereafter dismiss the petition....

(Emphasis added.) Section 707 describes the "fitness hearing."

ed out that the juvenile in *Breed* had been subjected to a hearing in which his guilt had been adjudicated *before* the transfer hearing was held, while the reverse procedure was used in *Martinez*. *Id.* at 890–91.

We took a different approach, however, in *Rios v. Chavez*, 620 F.2d 702 (9th Cir. 1980), where a double jeopardy violation was found. In *Rios*, the juvenile was subjected to a hearing under W & I §§ 701 and 702 where evidence was heard by the judge regarding the alleged crime and the amenability of Rios to care and treatment under the California juvenile justice system, as authorized by § 707.[9] The juvenile court judge entered the following finding:

> The court ... finds that ... Rios is a person described in Section 602 of the Welfare and Institutions Code, he was 16 years of age or older at the time of the alleged commission of such offense, and further, said minor is not a fit and proper subject to be dealt with under the Juvenile Court Law in that said minor would not be amenable to the care, treatment, and training program available through the facilities of the Juvenile Court.

*Id.* at 703.

■ We found that, even though there was evidence that the judge and parties intended the proceeding to be merely a fitness hearing and not an adjudicatory hearing, jeopardy nonetheless attached because the risk of adjudication inherent in a § 701[10] hearing was present throughout Rios's hearing. "The [juvenile court] judge's references to 'jurisdiction' must be read in light of Section 602's definition of jurisdiction as including a determination that the minor had committed the offense charged." *Rios*, 620 F.2d at 708. We found that the transcript contained a great deal of evidence of the alleged offense, and that Rios had, indeed, been "exposed to the kind of 'risk' which *Breed* prohibits." *Id.* "Section 602[11] clearly opened up the possibility that Rios' *guilt as a juvenile would be adjudicated at that hearing*." *Id.* (emphasis in original).

In a special concurrence in which the other two panel members joined, Judge Goodwin noted that the statutory scheme existing at that time in California (the same one as in *Breed* and *Martinez*) inherently caused jeopardy to attach at a fitness hearing, whether the fitness hearing was held before or after an actual adjudication of guilt, because the transfer decision was made *during* a section 701 hearing where the risk of adjudication was always present. *Id.* at 708–709 (Goodwin, C.J. concurring).

Barker contends that his case is "on all fours" with *Rios* and that, therefore, this court should find that jeopardy attached at his fitness and detention hearings. He apparently interprets *Rios* as holding that a juvenile is put in jeopardy at any juvenile court hearing where a great deal of evidence is introduced concerning the alleged crime. Barker argues that, as in *Rios*, an overwhelming amount of evidence relating to the circumstances of the murders he was alleged to have committed was introduced at his detention and fitness hearings, and that he was therefore put in jeopardy.

Barker fails to recognize the importance, however, of the fact that his fitness hearing took place under a California statutory scheme different from the one involved in *Breed* and *Rios*. He also fails to recognize that our decision that jeopardy had attached in *Rios* was very much based on the structure of the statutory scheme as it existed at that time.

After the *Breed* decision, California rewrote W & I § 707 to conform to the requirements of that decision. *See* 1975 Cal.Stat., c. 1266, § 4, p. 3325. Under the new section 707, the fitness hearing can no longer take place "at any time during" the jurisdictional/adjudicatory hearing as was the case under the statutory scheme involved in *Breed* and *Rios*. The new section 707 requires that the fitness hearing take place *prior* to the attachment of jeopardy—prior to the hearing of evidence at the adjudicatory hearing:

---

**9.**  *See supra* note 8 for text.

**10.**  *See supra* note 6 for text.

**11.**  *See supra* note 5 for text.

In any case in which a minor is alleged to be a person described in Section 602 by reason of the violation, when he was 16 years of age or older, of any criminal statute or ordinance, upon motion of the petitioner, *made prior to the attachment of jeopardy* the court shall cause....

1975 Cal.Stat., c. 1266, § 4, p. 3325 (emphasis added) (*see supra* note 2 for full text). Because the fitness determination no longer may take place *within* the jurisdictional/adjudicatory hearing and because it *must* take place before jeopardy attaches, a judge at a fitness hearing would have no power to adjudicate the juvenile's guilt. Therefore, under the new statutory scheme, unlike the scheme reviewed in *Rios*, a juvenile is not put "at risk"—not put in jeopardy—during a fitness hearing.

It was under the amended section 707 that Barker was ordered to be tried as an adult. He was subjected to a detention hearing and fitness hearing, but, as required by the statute and the constitution, was not subjected to an adjudicatory hearing before he was transferred to adult court. Because Barker's guilt was not adjudicated at his hearings,[12] and because neither the detention nor the fitness hearing involved the *risk* of adjudication of the alleged offenses, jeopardy did not attach and Barker's transfer to and prosecution in adult court did not violate the Double Jeopardy Clause.[13]

## II.  Due Process Claims

### A.  Detention Hearing

■ The California Attorney General argues that, to the extent Barker alleges his due process rights were violated at his detention hearing, his claims are moot and thus not cognizable on federal habeas corpus. The Attorney General asserts that Barker's claims refer to a prior detention and that he has long since been incarcerated because of his conviction for three murders.

We agree. In *James v. Reese*, 546 F.2d 325 (9th Cir.1976), we held that the habeas petitioner's contention that he did not receive bail referred to a prior detention and was therefore moot. *Id.* at 328. Similarly, Barker's detention hearing produced only temporary detention pending his fitness hearing. His claim is presently moot.

### B.  Fitness Hearing

■ In *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), the Supreme Court held that a juvenile court's decision to transfer a child from the statutory protection of the juvenile court to an adult court is "critically important." *Id.* at 553, 556, 560, 86 S.Ct. at 1053, 1055, 1057. *See also Harris v. Procunier*, 498 F.2d 576, 577 (9th Cir.), *cert. denied*, 419 U.S. 970, 95 S.Ct. 235, 42 L.Ed.2d 186 (1974). Thus, the Court held due process requires that, before a juvenile can be transferred to an adult court, the juvenile must be given a hearing, effective assistance of counsel, access to records relied on by the court, and a statement of reasons for the juvenile court decision. *Id.* at 561–562, 86 S.Ct. at 1057; *see also Guam v. Kingsbury*, 649 F.2d 740, 743 (9th Cir.), *cert. denied*, 454 U.S. 895, 102 S.Ct. 392, 70 L.Ed.2d 210 (1981).

Barker does not refute that these due process requirements were satisfied in this case. He was given a hearing pursuant to W & I § 707, was represented by counsel, was given access to all records and evi-

---

**12.** Barker's belief that the amount of evidence offered relating to the alleged offense determines whether a juvenile is put in jeopardy is based in part on a misconception of what the word "adjudicated" means. Throughout Barker's briefs, he states that his guilt was "adjudicated" at his detention and fitness hearings. Apparently, he believes that "adjudicated" means that evidence of guilt has been introduced and "argued by both sides." However, "adjudicate" means "to determine finally" or "adjudge," which means "to decide, settle or decree."  Black's Law Dictionary 39 (5th ed. 1979). Barker's guilt was certainly not adjudicated at either of his juvenile court hearings.

**13.** We also note that at the detention hearing, the court merely found that the state had made out the prima facie case necessary for detention pending the subsequent hearings. And at the fitness hearing, the judge specifically stated: "The issue of guilt or innocence is not before me."

dence, and the court stated reasons for its ruling.

Instead, Barker contends his right of confrontation under the Sixth and Fourteenth Amendments was violated when out of court statements of his accomplice were introduced at his fitness hearing.

Neither the Supreme Court nor our circuit has ruled that due process guarantees at a juvenile fitness hearing include the right of confrontation. In fact, the Supreme Court emphasized in *Kent* that the fitness hearing "may be informal," and that its holding did *not* imply that a fitness hearing must satisfy all the due process guarantees of a criminal trial:

> We do not mean by this [holding] to indicate that the [fitness] hearing to be held must conform with all of the requirements of a criminal trial or even of the usual administrative hearing; but we do hold that the hearing must measure up to the essentials of due process and fair treatment.

383 U.S. at 562, 86 S.Ct. at 1057. And in *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), where the Court held that in a juvenile *adjudicatory* hearing, due process requires, *inter alia*, the right of confrontation and cross-examination, the Court stressed that its holding pertained *only* to the adjudicatory hearing and did not pertain to the juvenile process before or after this hearing takes place. *Id.* at 13, 87 S.Ct. at 1436. The Court also noted in *Breed* that although the essentials of due process are applicable to fitness hearings, the Court has "never attempted to prescribe criteria for, or the nature and quantum of evidence that must support a decision to transfer a juvenile for trial in adult court." *Breed*, 421 U.S. at 537, 95 S.Ct. at 1790.

The Supreme Court has recently held that a new rule of constitutional law may not be applied in cases on collateral review unless it is determined that the new rule is one that should be applied retroactively to all cases on collateral review. *Saffle v. Parks*, — U.S. ——, 110 S.Ct. 1257, 1258–59, 108 L.Ed.2d 415 (1990); *Teague v. Lane*, 489 U.S. 288, 299–302, 109 S.Ct. 1060, 1069–1070, 103 L.Ed.2d 334 (1989). The Court formulated two narrow exceptions to the general rule of nonretroactivity: (1) "if the rule places a class of private conduct beyond the power of the State to proscribe," *Saffle*, 110 S.Ct. at 1263; *Teague*, 109 S.Ct. at 1075; and (2) if the rule is a "'watershed rule[] of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Saffle*, 110 S.Ct. at 1263 (quoting *Teague*, 109 S.Ct. at 1075).

The Court has defined a "new rule" as one that "breaks new ground or imposes a new obligation on the States or the Federal Government," or was not *"dictated"* by precedent existing at the time the defendant's conviction became final." *Teague*, 109 S.Ct. at 1070 (emphasis in the original). A holding that Barker's due process rights were violated in this case would certainly entail formulating a "new rule" that a juvenile has a constitutional right of confrontion under the Sixth and Fourteenth Amendments at a juvenile fitness hearing. Therefore, we may not address Barker's claim unless such a rule comes within either of the two exceptions, cited above, to the general principle that new rules will not be applied on collateral review. *See Saffle*, 110 S.Ct. at 1263.

The first exception, that a new rule should be applied retroactively if it places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," *Teague*, 109 S.Ct. at 1075, is clearly not applicable here.

The second exception, that a rule should be applied retroactively if it is a "'watershed rule[] of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding," *Saffle*, 110 S.Ct. at 1263 (quoting *Teague*, 109 S.Ct. at 1075), requires some discussion. The right

of confrontation in a criminal trial is a "fundamental right," *Pointer v. Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965), which is concerned with the "accuracy of the truth-determining process in criminal trials by assuring that 'the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement.'" *Dutton v. Evans*, 400 U.S. 74, 89, 91 S.Ct. 210, 220, 27 L.Ed.2d 213 (1970) (quoting *California v. Green*, 399 U.S. 149, 161, 90 S.Ct. 1930, 1936, 26 L.Ed.2d 489 (1970). Rulings implicating the right of confrontation have been held to apply retroactively. *See, e.g., Roberts v. Russell*, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968) (holding that *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) is to be applied retroactively).

However, we believe that our decision in *Harris v. Procunier*, 498 F.2d 576 (9th Cir.1974) (*en banc*), *cert. denied*, 419 U.S. 970, 95 S.Ct. 235, 42 L.Ed.2d 186 (1974), compels us to hold that a new rule, stating that due process requires the right of confrontation *in the context of a W & I § 707 juvenile fitness hearing*, should not be applied retroactively. Therefore, we may not apply such a rule to this case. In *Harris*, we decided, en banc, that the due process guarantees prescribed in *Kent*, including the right to counsel, should not apply retroactively. We reasoned that, although rules concerning the right to counsel have often been applied retroactively, the Court's purpose in *Kent* in providing basic due process rights, including the right to counsel, was not to "'overcome an aspect of the criminal trial that substantially impairs its truth-finding function.'" 498 F.2d at 579 (quoting *Williams v. United States*, 401 U.S. 646, 653, 91 S.Ct. 1148, 1152, 28 L.Ed.2d 388 (1971)):

> First, a certification [or fitness] hearing is not a trial, but a hearing. Juvenile proceedings are not intended to be adversarial. Second, the function of a certification hearing is not to gather facts for the purpose of conducting criminal proceedings against the juvenile, but to determine whether it would be proper for the juvenile court to continue to assert jurisdiction over the juvenile. While we in no way discount the thrust of *Kent* to provide due process guarantees at the certification hearing, we do not see that it is the type of constitutional rule which is directed at, or in any way impairs, the truth-finding function.

*Harris*, 498 F.2d at 576.

Similarly, a new rule that due process in a fitness hearing requires the right of confrontation should not be applied retroactively because the function of the fitness hearing "is not to gather facts for the purpose of conducting criminal proceedings against the juvenile." *Id.* As the California Supreme Court stated in *People v. Chi Ko Wong*, 18 Cal.3d 698, 557 P.2d 976, 135 Cal.Rptr. 392 (1976), *overruled on other grounds, People v. Green*, 27 Cal.3d 1, 609 P.2d 468, 164 Cal.Rptr. 1 (1980):

> 'In determining whether the essentials of due process and fair treatment [are] provided ..., it is important to keep in mind the exact nature of a juvenile court transfer hearing. Such a hearing does not result in a determination of delinquency ..; does not result in a determination of guilt as may a criminal trial; and does not directly result in confinement or other punishment as may both a delinquency hearing and a criminal proceeding. In short, the transfer hearing is not an adversary proceeding. Rather, [its] sole purpose ... is to determine 'whether best interest of the child and of society would be served by the retention of the juvenile court authority over him or whether the juvenile, under all the circumstances, should be transferred to be tried as an adult.' [Citation] We believe that this purpose may best be effectuated by the sound exercise of the juvenile court judge's discretion at an informal hearing, limited of course by the general requirements of due process and fair treatment, but not governed by the strict rules of procedure and evidence applicable at either a criminal trial or at a juvenile court delinquency hearing.'

*Chi Ko Wong*, 18 Cal.3d at 718–19, 557 P.2d at 989, 135 Cal.Rptr. at 405 (quoting *State v. Piche*, 74 Wash.2d 9, 14, 442 P.2d 632, 635, *cert. denied*, 393 U.S. 969, 89

S.Ct. 409, 21 L.Ed.2d 382 (1968), *overruled on other grounds, McRae v. State*, 88 Wash.2d 307, 559 P.2d 563 (1977)).[14]

In addition, we held in *Harris* that the effect on the administration of justice of a retroactive application of the due process standards in *Kent* would be "devastating." *Harris*, 498 F.2d at 579. "The number of cases affected would be significant, and there would be numerous instances where the juvenile courts would no longer have jurisdiction over the person of the defendant by reason of age." *Id.* The same would be true if we were to adopt a new rule granting the right of confrontation at juvenile fitness hearings.

Therefore, because recognizing the right Barker claims was violated would create a new constitutional rule under *Teague* and *Saffle* and because we believe neither of the two exceptions to the general principle that a new rule is not to be applied on collateral review apply in this case, we may not address Barker's right of confrontation claim. *See Teague*, 109 S.Ct. at 1078.[15]

Before he was transferred to be tried as an adult, Barker was given a hearing in juvenile court. He was represented by counsel, was entitled to call witnesses, was entitled to cross-examine the probation officer who prepared his behavioral report, was given access to evidence, and was given a statement by the juvenile court judge of the reasons why Barker was not amenable to juvenile court treatment. Therefore, none of Barker's recognized due process rights were violated.

AFFIRMED.

---

**14.** In this case, the reason for holding that such a ruling should not be retroactive would seem to be the same reason for not imposing such a constitutional requirement in the first place.

**15.** Again, we do not address Barker's claims that California law was violated at his hearings.