979 F.2d 854
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Dennis Earl HUNGATE, Petitioner-Appellant
v.
Robert G. BORG, Warden Respondent-Appellee
 No. 91-56477.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 5, 1992.
Decided Nov. 23, 1992.
 
 1
 Before D.W. NELSON, CYNTHIA HOLCOMB HALL and RYMER Circuit Judges.
 
 
 2
 MEMORANDUM*
 
 
 3
 Petitioner Dennis Hungate is a California state prisoner. He appeals the district court's denial of his 28 U.S.C. § 2254 habeas petition challenging his state conviction for robbery, attempted murder and use of a firearm. For the reasons stated below, the district court ruling is affirmed.
 
 FACTUAL & PROCEDURAL BACKGROUND
 
 4
 On March 28, 1986 a service cashier in Garden Grove was robbed of her purse at gunpoint. The robber also shot at the victim after she ran after him. He then got into a waiting getaway car. Soon after a police car undertook pursuit.
 
 
 5
 At some point in the chase, Mr. Hungate jumped out of the car and took off by foot. The police continued in pursuit of the car, finally succeeded in bringing it to a stop, and arrested Mr. Sutton who was the driver. The police found some of the victim's belongings in the car and discovered that the car was registered to Mr. Hungate.
 
 
 6
 Some hours later, a citizen saw Mr. Hungate walking in the neighborhood where he had earlier jumped from his car. The citizen was suspicious of Mr. Hungate and called the police. The police arrived, detained Mr. Hungate and obtained an on the scene identification from the victim of the robbery as well as from another man who witnessed the robbery. Mr. Hungate was arrested. Upon searching Mr. Hungate, the police discovered a one dollar silver certificate and a two dollar bill. The victim testified that her purse had contained both a silver certificate and a two dollar bill. These items were missing from her purse which police found in the car driven by Mr. Sutton.
 
 
 7
 Mr. Hungate was convicted in Orange County Superior Court of robbery, attempted murder and firearm use. Mr. Hungate appealed his conviction to the California Court of Appeals and filed a petition for a writ of habeas corpus before the same court. The crux of Mr. Hungate's claim is that there was a conspiracy between his co-defendant's, Mr. Sutton's, attorney, the prosecutor and the trial judge in co-defendant's case to prevent the use of Mr. Sutton's exculpatory testimony at Mr. Hungate's trial. Mr. Hungate asserts that this alleged conspiracy denied him his Sixth Amendment right to compulsory process and his Fifth Amendment right to due process.
 
 
 8
 The state appeals court consolidated Mr. Hungate's direct appeal and his habeas petition. The court affirmed Mr. Hungate's conviction and, after reaching the merits, denied Mr. Hungate's habeas petition. On April 20, 1990, the California Supreme Court denied the habeas petition without comment. Mr. Hungate then filed a petition for writ of habeas corpus in the district court. The petition was assigned to a magistrate judge who issued a report recommending dismissal of the petition. On March 29, 1991 after conducting a do novo review of the record, considering the recommendation of the magistrate judge and objections to the magistrate judge's report, the district court adopted the findings of fact contained in the Final Report and Recommendation of the magistrate judge and dismissed the petition. Mr. Hungate now asks us to review the district court decision.
 
 STANDARD OF REVIEW
 
 9
 The decision whether to grant or deny a habeas petition is reviewed de novo. Thomas v. Brewer, 923 F.2d 1361, 1364 (9th Cir.1991). In reviewing a district court's grant or denial of a habeas corpus petition, state court factual conclusions are entitled to a presumption of correctness under 28 U.S.C. § 2254(d) (1988). See Collazo v. Estelle, 940 F.2d 411, 414-16 (9th Cir.1991) (en banc), cert. denied, --- U.S. ----, 112 S.Ct. 870 (1992).
 
 ANALYSIS
 
 10
 Petitioner failed to ask the trial court for a continuance until after Mr. Sutton had been sentenced in order that Mr. Sutton could testify on his behalf without fear of being penalized for so doing. The government contends that Petitioner's failure to request a continuance procedurally bars him from bringing this habeas appeal. This is not so.
 
 
 11
 A procedural default does not bar consideration of a federal claim on habeas review unless the last state court rendering a judgment in the case expressly states that its judgment rests on a procedural bar. Barker v. Estelle, 913 F.2d 1433, 1437 n. 3 (9th Cir.1990) cert. denied 111 S.Ct 2060 (1991). The California Supreme Court denied Mr. Hungate's petition for review without expressly stating that the denial was based on a procedural bar. Accordingly, we are not precluded from addressing the merits of Mr. Hungate's habeas claims.
 
 
 12
 To succeed on his compulsory process claim, Petitioner must demonstrate some sort of government misconduct and this misconduct must be the substantial cause for the witness refusing to testify. See United States v. Hoffman, 832 F.2d 1299, 1303 (1st Cir.1987) Berg v. Morris, 483 F.Supp. 179, 184 (E.D.Cal.1980). 'Whether substantial government interference with a defense witness occurred is a factual determination ...' United States v. Patterson, 819 F.2d 1495, 1508 (9th Cir.1987) (citation omitted).
 
 
 13
 During Mr. Hungate's trial, he called Mr. Sutton as a witness. Mr. Sutton had already pled guilty to the charges against him but had not yet been sentenced. He refused to testify on Mr. Hungate's behalf asserting his Fifth Amendment privilege. Mr. Sutton then wrote the trial judge a note indicating that while he wanted to testify on Mr. Hungate's behalf, "the court and/or district attorney made an unwritten stipulation" that if he did so testify he would be penalized for giving that testimony at sentencing.
 
 
 14
 Mr. Hungate's trial judge held a hearing to determine whether Mr. Sutton had in any way been induced not to testify on Mr. Hungate's behalf. When asked, Mr. Sutton denied being told by either his attorney, the trial judge or the prosecutor that if he testified on Mr. Hungate's behalf he would receive a harsher sentence. Rather, Mr. Sutton testified that his attorney told him that if he committed perjury this fact may be taken into consideration at sentencing. In addition, both Mr. Sutton's trial judge and the prosecutor testified that they had never suggested that Mr. Sutton would be penalized for waiving his Fifth Amendment privilege.
 
 
 15
 The magistrate judge correctly concluded in his report that there was no evidence of government misconduct and that it was "implausible" to "somehow implicate the prosecutor and the trial judge in what was clearly the witness' decision" not to testify on Mr. Hungate's behalf. Rather, by Mr. Sutton's own testimony, he was simply told by his attorney that if he testified he may be held accountable at sentencing for lying on Mr. Hungate's behalf.
 
 
 16
 Petitioner argues that the issue has been mischaracterized. The question, says Mr. Hungate, is not whether Mr. Sutton was or was not free to testify, but whether there was a conspiracy to extend "artificially" Mr. Sutton's Fifth Amendment privilege by continuously postponing Mr. Sutton's sentencing until Mr. Hungate's trial was over. In short, relying on United States v. Westerdahl, 945 F.2d 1083, 1087 (9th Cir.1991), Petitioner argues that it is not necessary to show that the alleged conspirators coerced Mr. Sutton into not testifying; the fact that Mr. Sutton's Fifth Amendment privilege was purposefully kept alive until after Mr. Hungate's trial was over is enough to constitute government misconduct insofar as it denied Mr. Hungate his right to compulsory process and due process.
 
 
 17
 The Westerdahl court stated that "misconduct is not confined solely to situations in which the government affirmatively induces a witness not to testify in favor of a defendant." 945 F.2d at 1087 (emphasis added). The court, however, was not suggesting that it was irrelevant whether the government misconduct had an effect on a potential witness's decision to testify. Rather, it was pointing out that in addition to affirmative coercion, the government could negatively induce a witness not to testify by withholding some protection such as use immunity. However, Westerdahl still assumed that there was a relation between the government misconduct--either through commission or omission--and the decision of the witness not to testify. See United States v. Hoffman, 832 F.2d 1299, 1303 (1st Cir.1987).
 
 
 18
 There is no evidence of government misconduct in this case. Sutton's attorney requested the continuances because he believed it was in Sutton's best interest to maintain his Fifth Amendment privilege until Hungate's trial was over. The prosecutor testified that he had "absolutely no objection to [Sutton's] testifying truthfully in the case. That's his choice." The trial judge considered it a common practice to accede to this type of request. Under these circumstances, there is no government misconduct and Hungate's due process rights are not implicated under the Fifth Amendment nor is his Sixth Amendment right to compulsory process. Because we find no government misconduct, we need not reach the issue of the applicability of the harmless error doctrine in this case.
 
 
 19
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3